2000 ME 123

**In re JON N.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 25, 2000.

Decided June 30, 2000.

E. Chris L'Hommedieu, Lewiston, for appellant.

Andrew Ketterer, Attorney General, Matthew Pollack, Asst. Attorney General, David Hathaway, Asst. Attorney General, Augusta, for appellee.

David Veilleux, Lewiston, for Guardian ad Litem.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] The mother of Jon Daniel N. (Danny) appeals from the judgment of the District Court (South Paris, *Cote, J.*) terminating her parental rights. She raises numerous issues on appeal, including a challenge to the sufficiency of the evidence supporting the court's judgment, and a challenge to the court's reliance on the report of the guardian ad litem and testimony of one of the experts presented by the Department of Human Services. The mother also argues that DHS failed to meet its reunification obligations and that the court erred by adopting the pro-

posed order prepared by DHS. Because we find the mother's arguments to be without merit, we affirm the judgment.

## I.

[¶ 2] The evidence produced at the termination hearing reflects the fact that Danny's mother has a history of dependence on narcotics and numerous psychological difficulties.[1] Despite the recommendations of professionals that she engage in sustained and integrated therapy, the mother has been inconsistent with her treatment. She has dropped out of therapy on several occasions without the recommendation of her counselor, with two of the most recent gaps in treatment occurring within the six months prior to the termination hearing. Also, although the lack of a stable living arrangement had been one of the concerns that initially prompted Danny's removal from her custody, Danny's mother moved three times in the year prior to the termination hearing.

[¶ 3] Although the mother sought treatment for her narcotics addiction and attended the Spaulding Clinic in Massachusetts to deal with the pain disorders that led to her dependence on narcotics, she did so without informing DHS that she would be leaving the state and without consulting her treatment providers here in Maine. Only one of the mother's treatment providers opined that reunification was a realistic possibility, but even she recommended a very guarded approach and could not give an estimate of a time frame within which reunification could be accomplished. The forensic psychologist who performed one of the psychological evaluations of Danny's mother indicated that reunification should not and could not occur in the circumstances as they existed at the time of the termination hearing.

[¶ 4] Furthermore, because of past neglect, Danny now has special needs and faces future developmental hurdles that will demand additional attention from his caregivers. He has spent roughly half of his life in foster care. The mother's two older sons, who now are in their paternal grandparents' custody, have been diagnosed with, *inter alia*, post-traumatic stress disorder as a result of past neglect while in their mother's care. Although the mother was able to reunify with her children following involvement by social services in Massachusetts, the children's situation after the family's move to Maine again deteriorated to the point where their removal was necessary. Danny's mother admitted that it was necessary for DHS to "rescue[ ]" her children at that point. Danny's counselor testified that because of his emotional issues, it is particularly important that he remain in a stable living environment.

## II.

[¶ 5] Contrary to the mother's argument that the trial court adopted the proposed order of DHS "wholesale" and "virtually verbatim," the trial court made extensive revisions to the proposed order submitted by DHS, including omitting portions of the order and adding substantially to it. Therefore, this is not an instance in which we must direct particular scrutiny to the court's role in the proceedings. *Compare Weeks v. Weeks*, 650 A.2d 945, 946 (Me. 1994) (trial court adopted party's proposed findings of fact and conclusions of law verbatim, necessitating closer scrutiny on appeal). Furthermore, the extensive changes and additions reflect the fact that the termination order in this case is "the original product of a disinterested mind." *Id.*

[¶ 6] Notwithstanding the extensive hyperbole employed in the mother's brief,

1. The following psychological conditions have been identified as diagnoses or potential diagnoses for her: anxiety disorder, dysthymic disorder, somataform disorder, factitious disorder, factitious disorder by proxy, substance abuse disorder, malingering and mixed personality disorder.

overstating the evidence in favor of her position, there is competent evidence in the record to support the trial court's findings in this case. *See In re David G.*, 659 A.2d 859, 861 (Me.1995) (noting that if there is competent support in the record for the trial court's findings, this Court must sustain them). The record supports the court's determinations that, despite the mother's willingness and efforts toward taking responsibility for Danny, she is nevertheless simply unable to do so in a time frame reasonably calculated to meet his needs and that termination of the mother's parental rights is in Danny's best interest.

▇ [¶ 7] The mother also argues that the guardian ad litem "did nothing" in this case and therefore the court's reliance on the guardian's recommendation was error. Again, the record belies this assertion. The two reports submitted by the guardian reflect his more than adequate performance, including consistent and sustained contact with relevant parties and a comprehensive review of the extensive documentary evidence in this case. Because the guardian fulfilled his statutory duties pursuant to 22 M.R.S.A. § 4005(1)(A), the court was not precluded from taking into account his testimony and recommendation regarding the disposition of this case.

▇ [¶ 8] With respect to the mother's argument that the court erred in admitting the testimony of DHS's expert, Dr. Schetky, on factitious disorder, we review the court's determination that a witness is qualified to testify as an expert for an abuse of discretion. *See Pelkey v. Canadian Pacific Ltd.*, 586 A.2d 1248, 1254 (Me. 1991). Given that Dr. Schetky testified on

voir dire that she was very familiar with factitious disorder and the literature regarding it, and had seen several cases of it, coupled with her general qualifications as a forensic psychiatrist, the court did not abuse its discretion when it determined that she was qualified to testify as an expert.[2] Although at the time the mother objected to Dr. Schetky's testimony, she did so solely based on Dr. Schetky's qualifications to give expert testimony, she now argues on appeal that the court also failed to properly evaluate the quality of the evidence presented. We therefore review this latter claim for obvious error. *See State v. Boucher*, 1998 ME 209, ¶ 18, 718 A.2d 1092, 1096.

▇ [¶ 9] To be admissible pursuant to M.R. Evid. 702, scientific opinion evidence must be both relevant and reliable. *See State v. Fleming*, 1997 ME 158, ¶ 14, 698 A.2d 503, 507. Given that Danny's mother had potential diagnoses of factitious disorder and factitious disorder by proxy, both of which would affect her ability to parent Danny appropriately, testimony regarding the disorders was relevant. The mother's attorney also elicited testimony from Dr. Schetky regarding various articles and books published on the subject and the questioning indicated that the disorder has recently been included in the Diagnostic and Statistical Manual of Mental Disorders (DSM–IV) used by psychiatrists.[3] Therefore, it appears that the disorder is generally accepted as a diagnosis in the field of psychiatry. *Cf.* Field & Murray, *Maine Evidence* § 702.4 at 359 (2000 ed.) (noting that general acceptance in a scientific community can be used as an

---

2. The mother also argues, without citing any authority, that the court employed the wrong standard when evaluating whether Dr. Schetky was qualified as an expert. The court had noted that Dr. Schetky possessed knowledge superior to that of a lay person. This characterization of the inquiry, however, is entirely consistent with commentators' descriptions. *See, e.g.,* 31A Am. Jur. 2d *Expert and Opinion Evidence* § 59 at 65–66 (1989) ("generally all that is required is that the expert have skill

and knowledge superior to that of the general populace").

3. Because Danny's mother failed to object to the testimony based on its reliability, DHS did not have the opportunity or the occasion to make an offer of proof on the matter. Nevertheless, information that supports the reliability of the testimony was present in the record in the context of both attorneys' questioning on the subject as discussed above.

indicator of reliability). As a result, the court did not commit obvious error by admitting testimony regarding factitious disorder.

[¶ 10] We find the remainder of the mother's arguments to be without merit. Accordingly, we affirm the judgment of the District Court terminating her parental rights with respect to Danny.

The entry is:

Judgment affirmed.