2002 ME 65

**In re KALEB C. and Philip C.**

Supreme Judicial Court of Maine.

On Briefs: April 3, 2002.
Decided: April 17, 2002.

Stephen C. Whiting, the Whiting Law Firm, P.A., Portland, for plaintiff.

G. Steven Rowe, Attorney General, Matthew Pollack, Asst. Attorney General, Jill Green, Asst. Attorney General, Augusta, for defendant.

Tracy Philips, CASA, c/o Herb Pierce, West Bath, Guardian ad Litem.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] The parents of Kaleb C. and Philip C. appeal from the judgments entered in the District Court, (Lewiston, *Beliveau, J.*) terminating their parental rights to their children, after a prior appeal and remand. They argue that the trial judge abused his discretion in refusing to recuse himself, having already issued a judgment terminating their rights, and that there was insufficient evidence for a showing of parental unfitness. We disagree and affirm.

## I. CASE HISTORY

[¶ 2] The parents of Kaleb C. and Philip C. were before us in a recent appeal wherein we reiterated that the court must consider the statutory requirements for a finding of parental unfitness before considering the best interest of the children. *In re Scott S.*, 2001 ME 114, ¶ 22, 775 A.2d 1144, 1152.[1] The prior opinion stated the following facts:

[¶ 3] The mother and father were married in 1998 when Scott was three years

---

1. In *In re Scott S.*, the mother and father appealed from a judgment of the District Court terminating the mother's parental rights to Scott S. and terminating both parents' rights to Kaleb C. We affirmed as to Scott S. and vacated as to Kaleb C.

old. When Scott was almost four, the mother gave birth to Kaleb. Approximately two weeks after Kaleb was born, the mother called the Department of Human Services and said that she could not take care of her children any longer, particularly Scott. She admitted hitting him and telling him that she was going to give him up for adoption. The mother also admitted that she had physically abused Scott and her husband [2] and that she was in no condition to care for her newborn child, Kaleb. The mother was then hospitalized for psychiatric reasons. At the time of hospitalization, she said that she did not want her children and that she was afraid she was going to hurt them.

2. The mother was arrested by the Lewiston Police Department for assaulting her husband. It is not clear from the record how the charges were resolved.

[¶ 4] The Department filed a petition for a child protection order, but did not seek to have the children immediately removed from the home. Instead, the Department urged the father to assume responsibility for the children's care. The caseworker arranged for day care for the children and parenting assistance for both parents. Although the father had considered himself a "traditional father" and believed that it was his wife's responsibility to take care of the children, he agreed to take care of the children when they returned from day care and to continue as their primary caretaker. He also agreed to be responsible for ensuring that his wife would have no unsupervised contact with the

2. The statute provides that guardians *ad litem:*
> shall have face-to-face contact with the child in the child's home or foster home within 7 days of appointment by the court and at least once every 3 months thereafter

children until the Department felt that she was emotionally and mentally stable enough to return home and be with the children.

[¶ 5] In the days leading to the jeopardy hearing, the father struggled to take care of the children and was not always successful. The guardian observed that when she visited the home, it was uncared for, with "stuff" covering the stove top, the sink filled with dirty dishes and soured food, open containers of food, cat feces overflowing the litter box, an open third floor window with the children leaning out, and prescription medication on a nightstand where the children could easily get hold of it. In addition, the father allowed the mother to be alone with the children after she left the hospital.

*Id.* ¶¶ 3–5, 775 A.2d at 1146–47. In addition, the Department gained custody of Philip C. within twenty-four hours of his birth on July 26, 2000.

[¶ 3] Following our remand to "the same trial judge," the parents moved for his recusal on the ground that his prior decision in the case indicated that he could not be impartial. The District Court denied the motion.

[¶ 4] The court held hearings over three days to assess whether the father had made sufficient child care arrangements to protect their children from the mother's potential abuse. The Department presented the testimony of the Guardian *ad litem,* who had not met with the children in the time since the prior hearing and presented the same report that she presented during the first hearing.[2] The father proposed to

or on a schedule established by the court for reasons specific to the child and family. 22 M.R.S.A § 4005(b) (Supp.2001–02). The guardian *ad litem* did not meet with the children after the initial trial court's decision in this case nor did she issue a subsequent re-

place the children with a babysitter who offered to care for the children in her home free of charge, but who had little experience caring for children and no experience with adults suffering from mental illness. He also proposed to establish emergency care with his sister-in-law who lived forty minutes away in Westbrook and had a variable work schedule that raised doubts about her availability. The court found these arrangements unrealistic and inadequate, and held that the father was unable to protect his children from jeopardy presented by his wife. The court then held that the termination of the parents' parental rights was in the children's best interest.

## II. DISCUSSION

[¶ 5] The parents argue that the trial judge abused his discretion in failing to recuse himself and that there is insufficient clear and convincing evidence to justify termination of their parental rights. We review motions for recusal for abuse of discretion. *Estate of Dineen*, 1998 ME 268, ¶ 8, 721 A.2d 185, 188.

[¶ 6] The court's order denying the parents' motion for recusal noted that our remand order in *In re Scott S.* specifically remanded this case to "the same trial judge." *In re Scott S.*, 2001 ME 114, 775 A.2d 1144, 1155. Although it would have been better practice for the court to have specifically made reference to the Maine Code of Judicial Conduct, the record reflects that the court acted in accord with the Code and understood its obligations under the code. Maine Code of Jud. Conduct Canon 3 B(5). A judge at all times must be unbiased and impartial. *Id.* To the extent a judge on remand is unable to act in an impartial manner that judge must decline the remand assignment. In this case, a trial judge issued a thoughtful, lengthy opinion with substantial findings of fact recording the jeopardy posed by the parents' failure to protect their children from that jeopardy. The court's careful opinion reflects an unbiased consideration of the evidence.

[¶ 7] We affirm "an order terminating parental rights 'when a review of the entire record demonstrates that the trial court rationally could have found clear and convincing evidence in that record to support the necessary factual findings as to the bases for termination.'" *In re Allison H.*, 1999 ME 176, ¶ 6, 740 A.2d 997, 999 (quoting *In re Denise M.*, 670 A.2d 390, 392 (Me.1996)). We agree that the father's effort to provide child care for his children so that the mother would not have unsupervised contact with their children was inadequate to protect the children from jeopardy. In addition there is ample evidence in the record of the father's inability or unwillingness to reconcile himself to the seriousness of his wife's mental disability and its serious consequences for their children. Contrary to the parents' assertions, the evidence was sufficient for the court to have found, by clear and convincing evidence, first that the parents were "unwilling or unable to protect the child[ren] from jeopardy" and second that termination was in the best interest of the children. 22 M.R.S.A. § 4055(1)(B)(2)(a), (b)(i) (1992).

The entry is:

Judgment affirmed.

---

port. We conclude that the deficiencies in the guardian's performance did not affect the result in this case. Nonetheless, we remind the trial courts and guardians that the statutory requirements must be fulfilled.