2007 ME 24

**In re MARCUS S. et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 11, 2007.
Decided: Feb. 6, 2007.

Wendy D. Hatch, Waterville, for appellant.

———

G. Steven Rowe, Attorney General, Matthew Pollack, Asst. Atty. Gen., Pat Stevens, Asst. Atty. Gen., Augusta, for appellee.

John Youney, Skowhegan, Guardian ad litem.

Charles Reeves, Waterville, for father.

Panel: CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

LEVY, J.

[¶ 1] The mother of Marcus, Lillie, and Kyle S. appeals from a judgment entered in the District Court (Skowhegan, *Mullen, J.*) terminating her parental rights pursuant to 22 M.R.S. § 4055 (2006). The mother challenges the sufficiency of the evidence as to the court's finding that termination of her parental rights is in the children's best interests. Because ample record evidence supports the court's conclusion that termination of the mother's parental rights achieves permanence for these children and is in their best interests, we affirm.

## I. BACKGROUND

[¶ 2] In January 2005, the Department of Health and Human Services requested and obtained a preliminary protection order granting it custody of Marcus, who was then six, Lillie, who was then four, and Kyle, who was then one year old. Both parents agreed to a jeopardy order in February 2005, incorporating a reunification plan that required both the mother and the father to participate in services and allowed them visitation with the children, as long as it was determined by the guardian ad litem and the Department to be in the best interests of the children.

[¶ 3] The parents separated shortly after the entry of the jeopardy order and have since divorced. The father participated in services regularly, and visited consistently and appropriately with the children. The mother failed to attend services and stopped attending visits with the children in May 2005. At a second judicial review in November 2005, the court permitted the Department to cease reunification efforts with the mother. The Department filed a petition for termination of the mother's parental rights in January 2006, and the court adopted a permanency plan in March 2006 to reunify the children with the father.

[¶ 4] After a one-day hearing in May 2006, the court entered a judgment terminating the mother's rights to the children. The court found parental unfitness and determined that termination of the mother's parental rights is in the best interests of the children, largely because the children in this case are "high needs" and "require predictability and stability in their lives, something that mother is ill equipped to provide for the children." The court's decision contains a detailed evaluation of the evidence, including the following finding regarding the consequences of the mother's failure to participate in services and scheduled visits with the children:

Mother has repeatedly failed to participate in services offered to her by DHHS. DHHS presented a "paper trail" at hearing in the form of exhibits documenting in detail mother's continuing failure to follow through on services, visits, etc. . . . Even more inexplicably, not only has mother repeatedly failed to attend visits with the children, she has exacerbated the situation by calling at times on the day of visitation to tell the visit supervisor she was "on her way" so that the children would be expecting her, only to subsequently fail to appear or call back and disclose that she wasn't coming after all. The effect on the chil-

dren of such conduct was negative, to say the least: the foster father testified that mother's failure to attend scheduled visits "pretty well trashed the kids ... (they) would ask 'why doesn't she come? Why doesn't she love us anymore'?"

When mother did visit the children, the evidence was that the visits were "chaotic." Mother has not visited with the children since May 11, 2005, ironically a year to the day of the hearing. The court reasoned that termination of the mother's parental rights is necessary to give the children needed permanency through reunification with their father:

This case is somewhat unusual insofar as DHHS is not moving to terminate father's parental rights, instead planning on reunifying father with the children. This plan appears to have a chance of succeeding, but not if mother was allowed to disrupt any future placement, a concern of DHHS and the guardian which is supported by mother's previous conduct and statements.

[¶ 5] The mother filed this timely appeal, challenging only the court's finding that termination of her parental rights is in the best interests of the children and its analysis of the children's need for permanency.

## I. DISCUSSION

### A. The Best Interests of the Children

■■■ [¶ 6] Evidence is sufficient to affirm an order terminating parental rights "when a review of the entire record demonstrates that the trial court rationally could have found clear and convincing evidence in that record to support the necessary factual findings as to the bases for termination." *In re Kaleb C.*, 2002 ME 65, ¶ 7, 795 A.2d 71, 74 (quotation marks omitted). We review findings, including best interest findings, under the clearly erroneous standard by determining whether

there is any competent evidence in the record to support them. *See In re Thomas B.*, 1998 ME 236, ¶ 2, 719 A.2d 529, 530.

■■ [¶ 7] The District Court's conclusion that termination of the mother's parental rights is in the best interests of the children is fully supported by competent record evidence. As the court determined, the record demonstrates that the mother is unable or unwilling to care for the children in a time suited to meet their needs due to her near complete abdication of her reunification obligations. *See In re Elijah R.*, 620 A.2d 282, 285 (Me.1993) (stating that a parent's inability to take responsibility for a child within a time reasonably calculated to meet the child's needs is an appropriate consideration in determining best interests). In addition, the children all have "high needs" and require stability in their lives, something the court found the mother to be "ill equipped" to provide them. *See In re Michaela C.*, 2002 ME 159, ¶ 24, 809 A.2d 1245, 1252. The court also gave "considerable weight" to the guardian ad litem's observations that reintroduction of the mother back into the children's lives would have only a detrimental effect on their emotional health and well-being. *See In re Jon N.*, 2000 ME 123, ¶ 7, 754 A.2d 346, 349.

[¶ 8] The evidence is sufficient to support the court's finding that termination of the mother's parental rights is in the children's best interests.

### B. Permanency

[¶ 9] The mother also contends that because the permanent plan for the children in this case is not adoption and is instead reunification with the father, the court's best interest determination is in error because there is no need to terminate her parental rights to achieve the permanency plan. She contends that giving the father sole parental rights would be sufficient to

accommodate the legislative goal of permanency as applied to Marcus, Lillie, and Kyle.

[¶ 10] In *In re Thomas H.*, 2005 ME 123, ¶ 30, 889 A.2d 297, 307–08, we explained the need for courts to consider the statutorily mandated concept of permanency when making best interest determinations pursuant to section 4055. Although permanency is often achieved through adoption, permanency can also be achieved through other arrangements. *See In re Michaela C.*, 2002 ME 159, ¶ 29, 809 A.2d at 1253 (recognizing that permanency for some children might be achieved through kinship care or a long-term foster placement). Permanency is a dynamic concept that must be fashioned from the actual circumstances and needs of the child or children before the court.

[¶ 11] In this case, the court has determined that permanency can be achieved for the children through custody with the father. The court credited the father's testimony that the mother threatened to take the children, and determined that his fears that she would continue to pose a threat based on her prior behavior are well-founded. The mother herself testified that it was her intent to visit the children and eventually regain custody of them. The court found that the reunion of the father with the children would not create the needed stability for the children if the mother were allowed to disrupt their progress through repeated attempts to visit the children and regain custody. Contrary to the mother's contentions, the legislative policy of permanence is in fact served by termination of her parental rights. Instability is antithetical to permanence. The court's well-reasoned opinion gave proper weight to the concept of permanency in its best interests determination.

The entry is:

Judgment affirmed.