MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 45
Docket:        And-16-410
Submitted
  On Briefs:   February 23, 2017
Decided:       March 9, 2017

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE KENNETH S.


PER CURIAM

[¶1]  The mother of Kenneth S. appeals from a judgment of the District Court (Lewiston, *Oram J.*) terminating her parental rights pursuant to 22 M.R.S. § 4055(1)(B)(2) (2016).  She challenges the court's determination that termination of her parental rights is in the child's best interest, arguing that there is an alternative foster or adoptive placement for her and the child together; that her parenting deficits have not interrupted the child's development; and that there are safety concerns in the current foster placement.  We affirm the judgment.

[¶2]  On a petition by the Department of Health and Human Services filed in December 2014, two days after the child's birth, the court granted a preliminary protection order as against both parents, *see* 22 M.R.S. § 4034 (2016), and the child was placed in foster care.  In July 2015, the mother consented to a jeopardy order "based on [her] low cognitive ability, Autism

Spectrum Disorder, and behavioral [dysregulation] related either to her cognitive limitations or a mood disorder." *See* 22 M.R.S. §§ 4035-4036 (2016). DHHS filed a petition for termination of parental rights in September 2015, and in May, June, and July 2016, the court held a three-day contested hearing on the petition as to the mother.[1]  On August 3, the court issued a judgment terminating the mother's parental rights, finding that despite her diligent efforts, she is unable to protect the child from jeopardy and is unable to take responsibility for him, and will not be able to do either within a time reasonably calculated to meet his needs, *see* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); and that termination is in the child's best interest, *see id.* § 4055(1)(B)(2)(a).  The mother timely appealed.  22 M.R.S. § 4006 (2016); M.R. App. P. 2(b)(3).

[¶3]  We review the trial court's "factual findings for clear error and its ultimate conclusion regarding the best interest of the child for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial court's lens." *In re R.M.*, 2015 ME 38, ¶ 7, 114 A.3d 212.

[¶4]  Here, the court did not abuse its discretion in determining that the child's best interest is served by terminating the mother's parental rights.

---

[1] The court terminated the father's parental rights, with his consent, in November 2015.

With support in the record, the court found by clear and convincing evidence that the mother's mental health limitations, which the court characterized as "intractable" and impervious to therapy or treatment, prevent her from being able to act as an independently functioning parent to the child. As the court also found, the mother is at high risk for expecting the child to assume a parental role for her and is likely to be easily frustrated by any conflict with the child. Despite her diligent participation in the reunification plan, the mother is not yet even ready to care for the child during a visit without supervision. The mother herself requires daily living skills assistance and has a court-appointed limited guardian—her biological mother, the child's grandmother.

[¶5] Although the mother advocates that the child be moved to an alternate adoptive placement with *her* former foster mother so that the mother can maintain a relationship with the child, the former foster mother was not a licensed foster parent at the time of the court's decision,[2] and there

---

[2] The former foster mother's licensure had expired, and she was in the process of applying for a renewal of her license to operate a family foster home at the time of the termination hearing, pursuant to 22 M.R.S. § 8102 (2016); 18 C.M.R. 10 148 016 (2011). The court found that the licensure renewal process had "been delayed by administrative problems at DHHS."

4

is no evidence that she has spent time with the child other than during visits she supervised between the child and the mother.[3]

[¶6]  Additionally, we note that permanency planning for a child in foster care, 22 M.R.S. § 4038-B(4) (2016), and the best interest determination to be made in a termination proceeding, 22 M.R.S. § 4055(1)(B)(2)(a), are distinct from the question of *who* should adopt the child, which is addressed in an adoption proceeding governed by 18-A M.R.S. §§ 9-301 to 9-315 (2016). Nonetheless, in conducting a best interest analysis, the court may consider evidence that the current foster placement is furthering the child's permanency plan, especially where that plan is to place the child for adoption. *See In re K.M.*, 2015 ME 79, ¶ 11, 118 A.3d 812; *In re Kayla M.*, 2001 ME 166, ¶¶ 13-14, 785 A.2d 330 (explaining that the child's best interest was met by termination where the child had spent most of her life with her foster family and was bonded with her foster parents and sibling); *In re Charles G.*, 2001 ME 3, ¶ 15, 763 A.2d 1163 (finding that the trial court's best interest determination was not error, and affirming the court's termination of parental

---

[3] The mother's argument does not benefit from the statutory preference for a child to be placed with family members when the child is removed from a parent's custody, because such a kinship placement does not extend to a parent's former foster mother. *See* 22 M.R.S. § 4003(3-A) (2016) (providing for placement of the child "with an adult relative when possible"); 22 M.R.S. § 4002(9-B) (2016) (defining "relative" as "the biological or adoptive parent of the child's biological or adoptive parent, or the biological or adoptive sister, brother, aunt, uncle or cousin of the child"); *cf. In re N.W.*, 2013 ME 64, ¶ 15, 70 A.3d 1219.

rights, where the child had a strong attachment to the foster family and the foster family wanted to adopt the child).

[¶7]  Here, with support in the record, the court found that the child is attached to his foster parents and four foster siblings, with whom he has continuously resided almost since birth, and that the foster parents are even prepared to adopt the child.  The court did not err by finding that removal of the child from his current foster family—of which he is "an integral part"— and placement with the mother's own former foster mother "would benefit [the mother], but would not benefit [the child]."[4]

[¶8]  These and other findings demonstrate that the court properly considered the statutory factors relevant to its determination of the child's best interest for purposes of a termination proceeding—leaving to another day the issue of who should adopt the child pursuant to the considerations set out in 18-A M.R.S. § 9-308 and other applicable authority—including "the needs of the child, . . . the child's age, [and] the child's attachments to relevant persons," 22 M.R.S. § 4055(2) (2016).  The court's findings and ultimate best

---

[4] The court also did not err by finding that the child's foster parents have adequately addressed safety issues with the physical structure of the foster home, which had been of some concern to the mother and DHHS.

6

interest determination are supported by the record and do not reflect an abuse of discretion.

[¶9] Finally, although not challenged by the mother, the court did not err by determining that DHHS had proved, by clear and convincing evidence, at least one ground of parental unfitness. *See Guardianship of Hailey M.*, 2016 ME 80, ¶ 15, 140 A.3d 478.

The entry is:

Judgment affirmed.

Jeffrey S. Dolley, Esq., Dolley Law Firm, Lewiston, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2014-89
FOR CLERK REFERENCE ONLY