MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 13
Docket:        Ken-17-344
Submitted
  On Briefs:   January 11, 2018
Decided:       January 23, 2018

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


IN RE MEENA H. et al.


PER CURIAM

[¶1]  The mother of Meena H. and Blayne H. and the father of Blayne H.

appeal from a judgment of the District Court (Waterville, *Stanfill, J.*)

terminating their parental rights pursuant to 22 M.R.S. § 4055(1)(A)(1)(a)

and (B)(2)(a), (b)(i)-(ii) (2017).[1]  The mother challenges the sufficiency of the

evidence to support the trial court's finding of parental unfitness.[2]  Counsel for

the father filed a brief indicating that there are no arguable issues with merit

in this appeal and, by order signed September 26, 2017, we granted the father

the opportunity to file a supplemental brief.  The father did not file any

---

[1]  Meena's biological father is unknown, was served with the petition to terminate parental rights by publication, and has never participated in this proceeding.  In its judgment, the court terminated the parental rights of the "[u]nknown genetic father."  Blayne's father did participate in this case.  The court terminated *his* parental rights to Blaine and also did so with respect to Meena "[t]o the extent [he] may have a parentage claim with regard to Meena."

[2]  Following the court's judgment, the mother filed a motion for additional findings of fact and conclusions of law and a motion to amend the judgment, pursuant to M.R. Civ. P. 52(b) and 59(e). The court denied the motion, stating that the findings made were sufficient and that the proposed findings, even those that were true and uncontroverted, were irrelevant to the court's analysis.  On appeal, the mother does not challenge the court's denial of her Rule 52(b) motion.

supplemental materials. Concluding that the evidence supports the court's findings, we affirm the judgment.

[¶2] The court found, by clear and convincing evidence, that the mother and Blayne's father were unable to protect the children from jeopardy or take responsibility for the children within a time reasonably calculated to meet their needs, and that the termination of their parental rights is in the children's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii). We review the factual findings supporting the determination of parental unfitness for clear error. *See In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430. The court based its determination of unfitness on the following findings of fact.

> This case began in January 2016, but the family's involvement with the Department started long before that. Blayne and Meena . . . were the subjects of petitions for child protective orders filed on December 4, 2013. . . . The children remained in Department custody until the case was dismissed on October 2, 2015[,] after successful reunification with Mother . . . . Reunification with [Blayne's father] was not pursued at [Blayne's father's] request as he did not wish to pursue anything but visits with Blayne. . . .
>
> . . . Very quickly after reunification [in 2015, the mother] became more disengaged . . . . By January 27, 2016, [the mother's] mental health had deteriorated so significantly that she was hospitalized at Maine General Hospital for almost a month and was completely unable to care for the children. [Blayne's father], although aware that [the mother] needed hospitalization, did not step up to protect the children or be their primary caretaker.

On January 28, 2016, the Department sought and this court granted a [preliminary protection order], bringing the children back into Department custody. . . .

[The mother] has struggled with mental health issues resulting in multiple psychiatric hospitalizations since she was a teenager. . . . She carries a diagnosis of schizoaffective disorder, which means she exhibits both a psychotic component and mood disorder.

. . . [The mother's] continued medication compliance has historically been a big issue. When she is on her medications she generally does quite well. When [the mother] is symptomatic, she experiences thought broadcasting and paranoia; she can be depressed, manic, and psychotic. This can happen in a matter of days, and she is unable to care for herself or the children.

. . . .

. . . Although acknowledging that her actions contributed to [her children's anger, anxiousness and behaviors], [the mother] does not squarely take responsibility for her role in the harm the children have suffered. . . . [S]he does not understand the devastating impact that her spiraling mental health has had on these children.

. . . .

The second removal was devastating for the children. When she came back into care in January 2016, Meena was much more anxious tha[n] she had been the first time. She is parentified, and is always looking out for Blayne. . . . Her compulsive behaviors have increased. She has presented with somatic symptoms of anxiety. . . .

Meena reported a lot of fighting between her mother and [Blayne's father]. . . . She reported that her mother "bopped" her in the mouth and she did not understand why. . . .

Blayne is younger and does not have as high a level of anxiety as Meena. Blayne is angry and defiant and acts out aggressively. He is diagnosed with an adjustment disorder. He does not know what "home" is. . . .

[The mother] has been stable since February 2017, but she has had periods of stability before. . . . The court is very wary as to [the mother's] ability to recognize any future mental health crisis and seek appropriate safety for the children. When her disease flares up and is more active, she becomes paranoid, keeps the children close to her, will not ask for help, and is afraid someone will take the children. . . .

With regard to [Blayne's father], he did not participate in reunification services during the first case. . . . He only began to participate in reunification services in the fall of 2016. He has a history of domestic violence and was incarcerated . . . during this case. . . .

. . . .

[Blayne's father] has no insight into the harm Meena and Blayne have suffered, what their needs are, or the impact of [the mother's] mental illness. He admits that [his] relationship with [the mother] had a history of being rocky and [a] history of domestic violence. He denied that the domestic violence would have had any impact on the children because they were too young. . . .

. . . .

[The mother and Blayne's father] clearly love the children, and the children clearly love them. If Meena has a steady and predictable and consistent environment, she does well. She becomes destabilized with change . . . . In order to develop in a healthy manner, she needs safety, predictability, and security. She especially needs permanency in the form of a regular, safe, and

stable support system. . . . If returned to her mother, Meena would regress . . . .

The impact on Meena of her chaotic life with [her mother] is obvious; it is profound and significant. The impact on Blayne is less apparent. However, the past is prologue, both for parents and for the children. . . .

. . . [The mother] has worked very hard, especially in 2017, to address some of the many issues that existed in her case, and she has come a long way. Despite all the wonderful progress [the mother] has made in reunification, however, the court is sadly persuaded by clear and convincing evidence that she does not have the ability to provide a consistent, safe, stable and predictable environment for Meena and Blayne, which is the environment these children must have. With regard to [Blayne's father], the court is likewise persuaded by clear and convincing evidence that he does not have the ability to provide a consistent, safe, stable and predictable environment for Meena and Blayne and cannot do so within a time reasonably calculated to meet their needs.

The children are very fragile and highly anxious. . . . If returned to [their] mother's care, this court has no doubt that their mental and emotional health will decline *no matter how well [the mother] does*. . . . In other words, [the mother] simply cannot protect the children from jeopardy or meet their needs without regard to how well she has done in her services. . . . [T]his court is convinced that there will be another episode because that is the nature of [the mother's] disease.

. . . This case has been pending for well over [eighteen] months, and follows shortly after another episode of care for almost two years. Reunification services have been provided for almost [three and one-half] years. Permanency is of the utmost critical importance for these children, and they cannot get permanency in the form of a regular, safe, and stable support system with their parents.

(Citations omitted) (footnotes omitted).

[¶3]  These findings are sufficient to support the court's conclusion that the parents are unable to protect the children from jeopardy or take responsibility for the children within a time reasonably calculated to meet the children's needs.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).  We therefore conclude that the court did not err when it determined that the parents are unfit pursuant to section 4055(1)(B)(2)(b).  *See In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430.

[¶4]  Even though neither parent challenged the court's finding that termination is in the children's best interests, we also conclude that the court did not err or abuse its discretion in making that determination.  *See In re Arturo G.*, 2017 ME 228, ¶ 11 n.3, --- A.3d ---.  The record supports the court's conclusion that "termination will allow [the children] to heal, to grow and to thrive whereas a return to either parent will not."

The entry is:

Judgment affirmed.

Elyse M. Apantaku, Esq., Schneider & Brewer, Waterville, for appellant mother

Heidi M. Pushard, Esq., Lewiston, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Waterville District Court docket numbers PC-2016-5 and PC-2016-6
FOR CLERK REFERENCE ONLY