MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:     2018 ME 55
Docket:       Yor-17-423
Submitted
  On Briefs:  April 10, 2018
Decided:      April 24, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILDREN OF AMBER L.

PER CURIAM

[¶1]  The mother and the father appeal[1] from a judgment of the District Court (Springvale, *Janelle, J.*) terminating their parental rights to their two children pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(ii) (2017), as to the father, and 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(ii), (iv) (2017), as to the mother.  The father challenges the sufficiency of the evidence supporting the court's findings of unfitness as well as the sufficiency of the evidence supporting the court's finding that termination is in the best interests of the children.  He also argues that the court's termination of his parental rights constituted an abuse of discretion because it failed to take

---

[1] Pursuant to the procedure outlined in *In re M.C.*, 2014 ME 128, ¶ 7, 104 A.3d 139, counsel for the mother filed a brief indicating that there are no arguable issues of merit for appeal.  We entered an order permitting the mother to file a supplemental brief on or before December 28, 2017, but the mother did not do so.

2

into account "the negative consequences" of termination.[2] We affirm the judgment.

## I. BACKGROUND

[¶2] The court made the following supported findings of fact pertaining to the parents' fitness to parent their children:

> The children lived with their parents in New Hampshire from the time of their births to 2008. In April of 2008, they were removed from their parents' care and placed in New Hampshire Division of Children, Youth and Families (hereinafter "DCYF") custody. . . . It is not completely clear why the children were removed from their parents' home. [The mother] testified that the children were removed because of domestic violence between her and [the father]. There was also testimony that [the mother] had a substance abuse problem at one time. The children remained in foster care until February 2012, when they were returned to their parents' custody.
>
> [The parents] were separated when the children were returned to them. [The mother] remained living in New Hampshire and [the father] had relocated to Maine, where he currently resides. From 2012 to 2015, the children went back and forth between their parents' homes. Although it is not known how much time they spent in each home, the girls were living in [southern Maine with the father], his girlfriend, . . . and another roommate . . . when the Department formally became involved with the family in the summer of 2015.

---

[2] Although the father additionally argues that the court's acceptance of the Department's proposed findings of fact constitutes a failure by the court to exercise its independent judgment, we do not entertain that argument because the father failed to request further findings of fact, pursuant to M.R. Civ. P. 52(b), after the court entered its judgment. *See In re Caleb M.*, 2017 ME 66, ¶ 15, 159 A.3d 345 ("[W]e will no longer entertain a challenge to the trial court's independent judgment based on the court's adoption of a party's proposed order, absent a parent's motion for further or clarified findings pursuant to Maine Rule of Civil Procedure 52(b).").

. . . .

As of this date, [the parents] have had twenty months to engage in the services outlined in their reunification plans to alleviate jeopardy and to prove to the girls that they are now safe and reliable caregivers. Neither parent has alleviated jeopardy or arrived at the point where they can meet these girls' needs. [The mother] fails to acknowledge that her past issues have anything to do with the children's current struggles. She testified that her substance abuse, domestic violence and mental health issues are in the past and have nothing to do with what is going on now, and [that she] does not need any mental health treatments. [She] has refused counseling. She has not attended any parenting sessions, even though she maintains this is the only service that she had to do. [She] lacks sensitivity around the girls' attachment issues, as evidenced by her telling [the younger child] that [her] foster mother is just a care giver . . . . [She] has visited the children a total of three times . . . . [She] cited her work schedule, distance and car trouble as reasons for her failure to see her children. However, the Department offered transportation assistance and [a counseling agency] made changes to the visitation schedule based on [the mother's] reported changes in her work schedule. This past April, [the mother's] schedule changed and she was asked to contact [the counseling agency] to set up visits, however, this did not occur.

[The mother] has all but abandoned [the children]. Her failure to visit does nothing to show [the children] that she is a reliable caregiver and can provide a safe, stable and, nurturing environment.

Neither is [the father] in a position to parent the girls, but not for lack of contact with the girls or the Department. While [the father] has not yet found new housing, he has engaged in the other services and responsibilities outlined in his reunification plan. [He] continues to live with [his girlfriend and roommate], who he agrees cannot be around his children. . . . Despite [the father's efforts, he] continues to lack insight into the impact of his substance abuse issues on his parenting and does not know how to communicate

with the girls who have significant attachment issues. . . . [The father] continues to believe that the girls need to respect him and their behaviors need to change before they will be ready to return home. In other words, [the father] blames the girls for the fact that they are in foster care. At his last visit with the girls this past May, [the father] became angry when [the younger child] would not eat the food that he brought and told her that he was going to tell the Department that he did not want to see her again. Whatever the reason for the remark, it could not have assured [the child] that her father will always be there for her. . . .

(Footnotes omitted) (quotation marks omitted).

[¶3] The court also made the following supported findings regarding the extensive needs of the children, both of whom are on the cusp of their teenage years:

When the children entered the Department's custody, they were placed in separate therapeutic foster homes supported by [a counseling agency]. . . . The Department's caseworker sought therapeutic placements in southern Maine, but was unable to locate families that could meet the girls' needs in the area.

Although the [foster family of the older child has] struggled with [her] behaviors in their home, [she] remains in their care and there are no plans for [her] to leave their home. However, they are not a pre-adoptive family as they do not feel they will be able to meet [the child's] needs without support from the Department and other agencies. [Her] behaviors in the home have included verbal aggression and property destruction. . . .

While [the older child] has been fortunate to have been in one placement over the last twenty months, [the younger child] has not been so lucky. [One family] asked the Department to move [her] because they could not handle her behaviors, as [she] was verbally aggressive toward members of the . . . household. She was

also physically aggressive and had a great deal of difficulty regulating herself. . . .

. . . .

As with her other placements, [she] has been a challenge for [her current foster parents]. Although she loves [them] and wants to stay in their home, she is physically and verbally abusive (fiery and explosive) to everyone in the household. . . . Some of her behaviors raise safety concerns for herself and others. . . . [The foster mother] has taken [her] for crisis assessments and has developed protocols with [the counseling agency] for when [her] behaviors escalate. [The foster parents] are committed to keeping [her] for the long term, but do not believe they can adopt [her] for the same reasons given by [her sister's] foster parents.

At hearing, the children's therapists spoke about the girls' treatment plans but admitted that they have not been able to get very far in treatment because they are so busy "putting out fires." Both counselors testified that it is important for the girls to find their permanent homes and achieve stability so they can process their trauma histories. It is very important for the girls to know that they are with safe, reliable caregivers. The counselors are concerned that if they cannot work on the girls' trauma sooner rather than later, there is a high probability that they will struggle with poor mental health in adulthood.

Both counselors also addressed whether it would be beneficial for [the children] to engage in family counseling with their parents. If the parents are able to acknowledge that they neglected or abused the girls, and are ready to prove to them that they are now safe and reliable caregivers, family therapy may work. But, if the parents are not able to acknowledge the abuse and its impact on the children, family therapy could do more harm than good.

. . . .

6

> Although the children are not in pre-adoptive placements, they are in stable, long-term placements with safe, reliable caregivers who are doing their best to maintain the girls in their homes and make sure the girls are engaged in appropriate services. It is vital for the girls to achieve some level of permanency at this time, even if the only permanency the Court can provide right now is to let them know they will not be returning to their parents and to free them for adoption. . . . [The younger child] has been clear throughout this case that she does not want to return to her parents and [the older child] has recently told the Guardian ad Litem that she does not want to go back either. Although the girls are young, the Court takes their wishes into consideration to determine what is in the best interest[s] of the children.

(Footnotes omitted.)

## II. DISCUSSION

[¶4] These findings are sufficient to support the court's determination that both parents are (1) unwilling or unable to protect the children from jeopardy and that these circumstances are unlikely to change within a time which is reasonably calculated to meet the children's needs, and (2) unwilling or unable to take responsibility for the children within a time which is reasonably calculated to meet their needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *see also In re Meena H.*, 2018 ME 13, ¶ 3, 177 A.3d 1276. They are also sufficient to support the court's finding that the mother has failed to make a good faith effort to rehabilitate and reunify with the children, *see* 22 M.R.S. §§ 4041(1-A)(B), 4055(1)(B)(2)(b)(iv) (2017), and that

termination of both parents' rights is in the children's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a).

[¶5]  The father also argues that the court's ultimate termination of his parental rights constituted an abuse of discretion because termination at this point, when the current foster families are not immediately ready to adopt the girls, fails to establish permanency for the children.  The father is correct that there is no one-size-fits-all answer when it comes to permanency.  We have therefore frequently stated that the concept of permanency is a dynamic one, and permanency in a particular case "must be fashioned from the actual circumstances and needs of the . . . children before the court."  *In re Marcus S.*, 2007 ME 24, ¶ 10, 916 A.2d 225.  And "permanency planning for [children] in foster care and the best interest[s] determination to be made in a termination proceeding are distinct from the question of *who* should adopt the child[ren]."  *In re Kenneth S.*, 2017 ME 45, ¶ 6, 157 A.3d 244 (citations omitted).  Based on the record before us, the court did not abuse its discretion when it determined that termination is in the best interests of these two children when the parents have demonstrated that they are unable to offer the children any semblance of

permanency, due to their failure to alleviate jeopardy over a twenty-month period of time even with ample support from the Department.

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq., Drake Law, LLC, Berwick, for appellant father

Caitlin Ross Wahrer, Esq., Chester & Vestal, P.A., Portland, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Springvale District Court docket number PC-2015-41
FOR CLERK REFERENCE ONLY