MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 163
Docket:       Som-18-269
Submitted
  On Briefs:  November 28, 2018
Decided:      December 11, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

## IN RE CHILD OF STEPHENIE F.

PER CURIAM

[¶1]   Stephenie F. appeals from a judgment of the District Court (Skowhegan, *Benson, J.*) terminating her parental rights to her child pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(ii), (iv) (2017).[1]  Pursuant to the procedure outlined in *In re M.C.*, 2014 ME 128, ¶¶ 6-7, 104 A.3d 139, counsel for the mother filed a brief indicating that there are no arguable issues of merit for appeal.  We entered an order permitting the mother to personally file a supplemental brief on or before September 28, 2018, but the mother did not do so.  We affirm the judgment.

[¶2]   In its judgment, the court made the following findings of fact pertaining to the mother's ability to parent her child:

> The Department of Health and Human Services ("the Department" or "DHHS") filed a Petition for Child Protection Order on

---

[1]  The child's father does not appeal from the termination of his parental rights.

July 31, 2017. On that same date, the Department requested and received an Order of Preliminary Child Protection placing [the child] in the temporary custody of the Department. A summary preliminary hearing was scheduled for August 10, 2017. On that date, [the mother] (custodial parent), did not appear as she was incarcerated and no hearing was requested by the mother pursuant to 22 M.R.S. §4034(3).

A Jeopardy Order entered on November 2, 2017, found that [the child] was in circumstances of jeopardy to her health and welfare in the care of her mother . . . . [The mother] was not present for the scheduled Jeopardy Hearing and the Order entered allowed [the mother] to file any objections to the Order within 14 days of its issuance. [The mother] filed no objections. The jeopardy order found in relevant part:

> [The child] is in circumstances of jeopardy in the care and custody of her mother . . . due to [the mother]'s substance abuse. [The child] was found unsupervised and naked in the home while [the mother] was inebriated, unconscious and incoherent by police. [The child] is a vulnerable child who relies on her caregiver to provide for all her needs and protect her from Jeopardy, [the mother] has been unable to meet [the child]'s needs at this time.

The Jeopardy Order outlined with specificity [the services] that [the mother] was to engage in to ameliorate Jeopardy. Those services were: participation in a substance abuse evaluation including a level of care assessment and follow evaluator recommendations; medication management; random observed drug screens; sign all necessary releases requested by the Department and GAL; establish safe and stable housing free from domestic violence, drug[s], and alcohol; refrain from any and all criminal involvements; allow unannounced and announced visits to the home; keep the Department, GAL, and legal counsel updated on any changes in circumstances; attend all scheduled visits with [the child]; and participate in Family Team Meetings.

Referrals were made for [the mother] to receive a level of care assessment . . . . [The mother] attended 1 appointment and did not follow through or reengage in the service. Shortly after the appointment she attended she was again incarcerated. [The mother] then missed her transportation ride that was set up for her. Visitation was scheduled for two days a week. [The mother] often missed her ride or no-showed her scheduled visitations with [the child]. [The mother] did not appear for the scheduled jeopardy hearing and she additionally failed to surrender herself to the county jail pursuant to a stay of execution granted in a pending criminal matter. A warrant was issued for [a] probation violation and [the mother] was arrested. She remained incarcerated from November 21, 2017, to approximately April 12, 2018. A Family Team Meeting was held with [the mother] on February 21, 2018. [The mother] discussed being willing to do anything to reunify with [the child]. [The mother] stated she would consider residing at a homeless shelter closer to her mother and [the child] upon her release. The Department continued to express that her relationship with [her boyfriend] was problematic for reunification. There have been numerous domestic violence incidents between the two.

Upon her release from incarceration, [the mother] continued to drink, was the victim of severe physical domestic violence by two different individuals, moved to 4 different locations and was living at a shelter at the time of the TPR hearing. [The mother] testified that she began drinking when she was 16-years-old and was now 29-years-old. She attended one substance abuse treatment program when she was pregnant with [the child] but left the program early and did not complete it. During the reunification case she attended 2 scheduled appointments with [a counseling service] and no-showed the rest citing transportation issues. She did not attend any medication management appointments. She did not engage in or complete an IOP [intensive outpatient program] and was drug screening for probation but not for the Department despite requests for her to do so. [The mother] was inconsistent with attending visitations with [the child] prior to her incarceration and upon her release presented as mentally unstable

4

which caused the Department to place visitation on hold until her mental health could be assessed. During her incarceration, [the mother] was offered several services including case management, Prime for Life (Alcohol Treatment), Job Readiness, Seeking Safety (Domestic Violence education and support), and IOP. [The mother] did not participate in any of the services she was offered and signed up for.[2] The Department also requested that [the mother] work with her social worker at the jail to develop a strong relapse plan to avoid relapsing on alcohol after her release. [The mother] did not create a relapse prevention plan. [The mother] consistently blamed DHHS, KVCAP, the jail social worker and others for her lack of engagement in services and lack of progress towards reunification with [the child]. She does not take any responsibility for the reasons [the child] was removed or her lack of reunification success.

[The child] is a 3-year-old child that is dependent on her daily needs being met from her caregivers. [The child] was born drug affected. Due to some of the trauma of abuse and neglect that she experienced in her home she developed a scared and shy demeanor around many adults. She has since developed great bonds within her family unit and appropriate attachment figures. [The child] is engaged in Speech Therapy Services to help with her speech delay. [The child] is placed with maternal grandparents . . . whom are also licensed foster parents. [The grandparents] are meeting [the child]'s medical, emotional, and physical needs, and [the child] is thriving in her foster home.

---

[2] The mother and her Department caseworker both testified that the mother actually did participate in some services while in jail. The caseworker, however, testified that the mother participated in these services for only a "couple of weeks" before being released. Given that the mother did not make a good faith effort to engage in the services required by her reunification plan before her incarceration, during all but the last weeks of her nearly five-month incarceration, or after her release, it is highly probable that the court's misstatement did not affect its finding that the mother failed to make a good faith effort to rehabilitate and reunify with the child; therefore, the error was harmless. *See In re M.B.*, 2013 ME 46, ¶ 34, 65 A.3d 1260. Furthermore, the misstatement does not undermine the other two grounds of parental unfitness found by the court, and each ground, standing on its own, supports a termination of parental rights. *See In re M.E.*, 2016 ME 1, ¶ 10, 131 A.3d 898.

. . . .

    . . . . After almost a year of no engagement in reunification services to ameliorate the jeopardy she poses to her child, the clock has run out and it is time for [the child] to have the permanency she deserves.

(emphasis omitted).

[¶3]  These findings, all of which are supported by competent evidence in the record except as noted, *supra* note 2, are sufficient to support the court's determination that the mother is (1) unwilling or unable to protect the child from jeopardy and that these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs, and (2) unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *see also In re Meena H.*, 2018 ME 13, ¶ 3, 177 A.3d 1276.  They are also sufficient to support the court's finding that the mother has failed to make a good faith effort to rehabilitate and reunify with the child, *see* 22 M.R.S. §§ 4041(1-A)(B), 4055(1)(B)(2)(b)(iv) (2017), and that termination of the mother's parental rights is in the child's best interests, *see* 22 M.R.S. § 4055(1)(B)(2)(a).  *See also In re Children of Amber L.*, 2018 ME 55, ¶ 4, 184 A.3d 19.

    The entry is:

        Judgment affirmed.

Aaron B. Rowden, Esq., Waterville, for appellant mother

The Department of Health and Human Services did not file a brief

Skowhegan District Court docket number PC-2017-37
FOR CLERK REFERENCE ONLY