MAINE SUPREME JUDICIAL COURT                            Reporter of Decisions
Decision:      2019 ME 177
Docket:        Cum-19-295
Submitted
  On Briefs:   December 17, 2019
Decided:       December 30, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

IN RE CHILDREN OF TROY P.

PER CURIAM

[¶1]  Troy P., the father, and Paige D., the mother, appeal from a judgment of the District Court (Portland, *Eggert, J.*) terminating their parental rights to their three children.[1]  Both parents contend that the evidence is insufficient to support the court's findings of parental unfitness.  The mother also challenges the finding that she failed to make a good faith effort to rehabilitate and reunify with the children.  The father also challenges, among other things, the court's determination that the termination of his parental rights was in the best interests of the children.  We affirm the judgment.

---

[1]  Both parents testified that although the father's name is listed on the oldest child's birth certificate, he is not her biological father.  The father testified, however, that he is the "legal father" of the oldest child and the court indicated that it considered him the oldest child's father in its judgment; neither parent challenges that aspect of the court's judgment on appeal.  The record also reflects that the mother has another child who is not the subject of this child protection action.

2

[¶2]   In its judgment terminating the mother's and father's parental rights, the court made the following findings of fact:

Following the previous Child Protection proceeding being dismissed with the custody of the children being returned from the Department to [the] Mother, a Parental Rights and Responsibilities Order was put in place which required that Father have no unsupervised contact with the children.  Mother and the children moved to Portland from a shelter in Ellsworth with the assistance of Father and initially stayed in a motel with Father.  Upon running out of money and help from a friend, they all had to rely for a short time upon staying with friends, then they ended up homeless and on the streets of Portland.  On May 23, 2018 the parents called DHHS to report that they would be sleeping on the streets that night and had no place to go . . . . Right away the Department filed for a Preliminary Protection Order which was granted.  The children were placed in foster care within a week with the foster parents where they are still residing.

On June 4, 2018 the parents waived their right to a Summary Preliminary Hearing and the Preliminary Order remained in effect pending the Case Management conference on July 2, 2018 at which time the case was continued to September 4, 2018 for Trial Management Conference.  On that date the parents agreed to the entry of a Jeopardy Order.  The Court found that "Jeopardy as to each parent is based upon the following factors: the parents have prior child protective history regarding these children.  [The two older children] were previously in custody and the cases were dismissed in 2017, upon entry of [a] Parental Rights and Responsibilities Order, with a provision for supervised contact for the father.  More recently, the mother and father moved with the children to the Portland area, without a place to live.  The parents were unable to make a plan to keep the children safe.  The father has a number of serious mental health issues . . . which put the children at risk of harm."  After the entry of the Jeopardy Order Rehabilitation and Reunification plans were developed for both parents.

Father was known to have serious mental health issues and he was required to complete a mental health evaluation, follow all recommendations, and consistently engage in mental health treatment. He was to arrange for safe and stable housing for the children. He was also required to attend regular visitation with the children. [The] father has failed to meet any of these requirements.

Early in the case he had at least one visit with the children, but then indicated he was done with the Department including any visitation. In March 2019 he changed his mind on that and had one visit after which [the two older children] severely acted out and visits were stopped as to them, and [the] father refused to visit with [the youngest child] alone. No visits have since occurred. Father is presently living with a friend in Bath in a situation which he agrees would not constitute safe and stable housing for the children. Father has not been consistently engaging in mental health treatment and taking medications which would treat his mental health issues. He indicated a refusal to do so. Father has not been able to follow the conditions of his rehabilitation and is unlikely to do so in the immediate future.

Mother was to obtain a mental health assessment and follow any recommendations and to consistently engage in mental health treatment. She was to provide a safe and stable home for the children. She was to participate in supervised visitation with the children. Mother testified that she is unwilling to engage in counseling because she has been doing that for fourteen years and it has not helped her.[2] She is presently living with a friend in South Portland and his mother. Mother agrees that this housing is

---

[2] The mother and her Department caseworker testified that, despite her initial reluctance to see a counselor, the mother eventually agreed to seek counseling and went to a few sessions before stopping. Because there is substantial other evidence that supports the court's finding that the mother failed to make a good faith effort to rehabilitate and reunify with the children, it is highly probable that the court's minor misstatement did not affect its findings; therefore, the misstatement was harmless. *See In re Child of Stephenie F.*, 2018 ME 163, ¶ 2 n.2, 198 A.3d 203. Moreover, the misstatement does not undermine the other two grounds of parental unfitness found by the court, and each ground standing alone supports a termination of parental rights. *See id.*

not a safe and stable home for the children. She has started working and claimed to be able to provide such a home in the future, but the Court does not find that this will occur in a time reasonably calculated to meet the needs of the children. Mother has been recently visiting with the children on a supervised basis. She has been unable to progress to a check in basis of supervision at which a supervisor could leave for a period and check in from time to time. The supervisor does not find it safe at this time to leave the children alone with her. Mother has not been able to follow the conditions of her rehabilitation and is unlikely to be able to do so in a time frame calculated to meet the needs of the children.

. . . The level of care for the two [older] children is intensive and likely beyond the capability of the Mother and Father. It is in [the two older children's] best interest to remain with [their foster mother]. [Their foster mother] expressed a willingness to adopt the two children if parental rights are terminated.

[The youngest child] . . . has been receiving CDS services for her speech, and her language and understandability are improving. . . . [Her foster parents] have expressed their willingness to adopt [her] if parental rights are terminated.

. . . .

The Court finds that it is in the best interest of the children that the Petition for Termination of Parental Rights be granted and that they be made available for adoption.

[¶3] These factual findings, which are supported by competent evidence in the record, except as noted, *supra* n.2, are sufficient to support the court's ultimate findings that the parents are unable to protect the children from jeopardy or take responsibility for them in a time reasonably calculated to meet their needs, and that both parents have failed to make a good faith effort to

rehabilitate and reunify with the children. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii), (iv) (2018); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.

[¶4] The father challenges the court's best interest determination on the basis that it did not "address the concern that the children are not all placed together."[3] We have held "that the question of *who* will adopt [children] after parental rights have been terminated is not an issue that is determined in a termination hearing." *In re Child of Erica H.*, 2019 ME 66, ¶ 11, 207 A.3d 1197; *see also In re Kenneth S.*, 2017 ME 45, ¶ 6, 157 A.3d 244 ("[T]he best interest determination to be made in a termination proceeding [is] distinct from the question of *who* should adopt the child[ren], which is addressed in an adoption proceeding . . . ." (citations omitted)). At the time of the termination hearing, the children had been in foster care for fourteen months, and the father acknowledged that he was still not in a position to take custody of them. Accordingly, the court did not err or abuse its discretion in determining that the children's best interests would be served by freeing them for adoption. *See* 22 M.R.S. § 4055(1)(B)(2)(a) (2018); *In re Children of Anthony M.*, 2018 ME 146, ¶¶ 13-15, 195 A.3d 1229.

---

[3] The mother does not challenge the court's best interest determination.

6

[¶5]  We find no merit in the father's additional arguments.  Contrary to his assertions, the father was not denied due process when he told the court at the beginning of the termination hearing that he was consenting to the termination of his parental rights as to the oldest child and the court responded that it was not sure it would accept his consent; not only did the father reply, "Okay.  Thank you," he never raised the issue again and nothing in his testimony suggested such consent.  *See* 22 M.R.S § 4055(1)(B)(1) (2018) (dictating that a parent's consent to termination must be knowing, voluntary, and in writing); *In re H.C.*, 2013 ME 97, ¶ 13, 82 A.3d 80 (outlining the steps that must be followed for a court to accept a parent's consent to termination).

[¶6]  Nor did the court err by not explicitly addressing the testimony of the father's sister in its judgment.  In the absence of a motion for further findings, we infer that the court considered all of the evidence in the record and defer to its assignment of the weight to be given to any item of evidence.  *See In re Child of Kimberlee C.*, 2018 ME 134, ¶ 5, 194 A.3d 925; *In re H.C.*, 2013 ME 97, ¶ 10, 82 A.3d 80.

The entry is:

Judgment affirmed.

Vicki Mathews, Esq., Scarborough, for appellant Father

Deborah Munson Feagans, Esq., Gorham, for appellant Mother

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2018-36
FOR CLERK REFERENCE ONLY