MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2015 ME 94
Docket:      Yor-15-9
Submitted
 On Briefs: July 1, 2015
Decided:     July 28, 2015

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

## IN RE L.T.

GORMAN, J.

[¶1]   The father of L.T. appeals from a judgment of the District Court (Springvale, *Foster, J.*) terminating his parental rights to the child.  He contends that the evidence was not sufficient to support the court's finding of parental unfitness, and that the court abused its discretion in determining that termination of his parental rights is in the child's best interest.  The father also contends that the court abused its discretion in denying his motion for relief from judgment pursuant to M.R. Civ. P. 60(b) and in denying him post-termination visitation with the child. Finally, the father argues that the trial judge was biased against him, and that he had a due process right to a jury trial.  We disagree and affirm.

### I.  BACKGROUND

[¶2]  The father and mother, who are not married, separated shortly after the birth of their child in 2008.  In 2010, the mother obtained a protection from abuse

order against the father that restricted his contact with the child to supervised visits.[1]

[¶3]  Early in 2012, after an episode of domestic violence involving the mother and another male partner, the Department of Health and Human Services became involved with the family on an informal basis.  By agreement, the child was placed with her paternal grandmother, and the Department offered services to both parents.  Given the father's propensity for violence—demonstrated not only by his history of convictions and incarcerations, but by his own reports that he had once tracked down and beat over the course of a day and a half an individual he believed had molested a child, and that he had been placed in solitary confinement for over two years because he "went crazy" after learning someone had tried to kill him in prison—the Department referred the father for therapy designed to address his anger and violence issues.  The father began seeing the primary clinician for Violence No More, a certified batterers' intervention program, in May of 2012 but attended the sessions inconsistently, and stopped attending in July of 2012.

[¶4]  In the fall of 2012, after a series of events that caused the Department to believe that informal agreements with the parties would no longer provide sufficient protection to the child, the Department filed a petition for child

---

[1]  The record provided to the trial court suggests that the parents relied exclusively on protection from abuse orders, and amendments to those orders, to establish their respective parental rights and responsibilities.

protection alleging that the father[2] created jeopardy through neglect, emotional abuse, and physical abuse. On October 24, 2012, while at court for a case management conference, the father and the Department agreed to the entry of a jeopardy order as to the father, and the court signed an order referencing the parties' agreement on November 26, 2012. That order, which was not docketed until December 28, 2012, continued the child's placement with her paternal grandmother, and included a finding that the father had placed his child in jeopardy by "exposing the child to domestic violence . . . perpetrated by him [against the child's] mother." In addition, the order referenced the father's "long criminal history involving crimes of violence against others," and stated that the father's jeopardy "issues" were due, in part, to mental health and anger issues.

[¶5] Between the time the agreement was placed on the record and when it was actually entered in the docket, the father sent dozens of threatening and vulgar text messages to his mother. Based on those actions, the paternal grandmother requested and obtained a protection from abuse order against him. Nonetheless, as a result of the parties' agreement and the jeopardy order, the child continued to live with and be cared for by her paternal grandmother. Also during this time period, the father re-engaged in services intended to address his violence and his inability

---

[2] The mother was also subject to this petition, but the order from which the father appeals terminates only his parental rights. The mother has not participated in this appeal.

4

to control his anger. That re-engagement was short-lived, however, as he failed to complete a certified batterers' intervention program after the program asked him to leave.

[¶6] In January of 2013, the father again started to attend sessions with the clinician for Violence No More. Because the clinician was struck by the level of the father's impulsivity, he suggested a neuropsychological evaluation to rule out some organic brain disease or injury. During the evaluation, the father became angry and frustrated when he became concerned that the results of the evaluation might negatively affect his efforts to regain custody of the child. Ultimately, the evaluator was not able to determine the cause of the father's behavior.

[¶7] In March of 2013, the father was incarcerated for allegedly threatening Department caseworkers. As a result of the criminal threatening charge, the father was incarcerated from March of 2013 to July of 2013, although the charges against him were eventually dismissed. While held in jail for those charges, the father began taking medications that seemed to decrease his impulsivity and increase his control. This improvement was noted by the Violence No More clinician, who resumed his work with the father after he was released from jail.[3]

---

[3] The record also suggests that, late in 2012, the father found a new partner, who has had a positive effect on him. Through her, he has found solace and support within a church community that believes in the power of redemption. Despite these improvements in his life, which were in place throughout the rest of the case, the anger and impulsivity that have bedeviled the father's life for decades have not abated.

[¶8]  While the father was incarcerated in April of 2013, the Department filed a petition to terminate the father's rights to the child based largely on the factual allegations included in the jeopardy order.  During the next year and a half, the Department continued to offer services to the father, and the parties continued to appear at court for judicial reviews.   During at least two of those court events, the father demonstrated that he had not yet learned to control his anger.  In January of 2014, he sent a lewd text message to the mother.  On another occasion, the father told the paternal grandmother, "[y]ou scum; you're lower than low."

[¶9]  On June 13, 2014, eighteen months after the docketing of the jeopardy order, after three judicial reviews, and after the petition to terminate his parental rights had already been pending for over a year, the father filed a motion to vacate the jeopardy order pursuant to M.R. Civ. P. 60(b).[4]   In that motion, which accompanied a motion to continue the termination hearing, the father alleged that his former counsel "misinformed him as to the language and content of the Jeopardy Order, as well as what the language meant" and forced him to waive "his right to a jeopardy hearing based on coercion and threat of arrest at the court."  The court denied both the motion to continue and the motion for relief that same day.

---

[4]  Although the motion is dated May 12, 2014, it was not filed until June 13, 2014.

[¶10]  On June 16, 2014, just as the hearing on the termination petition was to begin, the father's attorney filed a motion seeking to end his representation of the father.  Thereafter, the hearing on that petition was continued on multiple occasions as the court (*Douglas, Foster, and Janelle, JJ.*) unsuccessfully attempted to assign new counsel for the father.  Finally, on August 27, 2014, an attorney retained by the father entered his appearance, and the hearing was held on September 19 and 22, 2014.

[¶11]  Ultimately, at the time of the termination hearing, the father had discontinued all services, and his only continuing effort toward reunification was visitation with the child.  During the actual termination hearing, the father talked over his own attorney and became so agitated during closing arguments that he had to leave the courtroom.

[¶12]  In an order dated December 9, 2014, pursuant to 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii), (iv) (2014), the court (*Foster, J.*) terminated the father's rights to the child on the grounds of his inability or unwillingness to alleviate jeopardy, his inability or unwillingness to take responsibility for the child in a time reasonably calculated to meet the child's needs, and his failure to make a good faith effort to rehabilitate and reunify with the child.

[¶13]  The court explicitly concluded that the father has a borderline personality disorder; is affected by bipolar disorder, depression, and post-traumatic

stress disorder; and that he has numerous criminal convictions, many of which involve aggression toward others. The court also concluded that the father fails to "function appropriately and effectively in his necessary interactions with others in the world" and, as a result, puts the child at risk of both physical and emotional harm.

[¶14] The father timely appealed pursuant to 22 M.R.S. § 4006 (2014) and M.R. App. P. 2.

## II. DISCUSSION

A.   Sufficiency of the Evidence

[¶15] The father argues that the trial court erred in terminating his parental rights because it did not have sufficient evidence before it to find, by clear and convincing evidence, the grounds for parental termination pursuant to 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii), (iv).

[¶16] The record supports the court's findings that the father has significant mental health and anger issues. Further, the record supports the court's findings that the father inconsistently engaged in services to deal with these issues and that the father had stopped all services at the time of the termination hearing. Because these factual findings are supported by competent record evidence and clearly constitute at least one, if not all three, of the statutory bases the court identified, we affirm the court's findings and conclusions as to the grounds for termination.

B.    Other Issues

[¶17]   The father also argues that the court abused its discretion in denying his motion to vacate the jeopardy order.  To the extent an order in response to a Rule 60(b) motion might be appealable pursuant to 22 M.R.S. § 4035, the father did not timely appeal from the jeopardy order or from the court's denial of the Rule 60(b) motion, and they are not before us to consider.  *See* 22 M.R.S. § 4006 (2014); 22 M.R.S. § 4035 (2014); M.R. App. P. 2(b)(3), (4); *In re Matthew W.*, 2006 ME 67, ¶ 10 n.2, 903 A.2d 333; Alexander, *Maine Appellate Practice* § 2.4, 2.11 at 35-36, 42 (4th ed. 2013).

[¶18]   The father next argues that the court abused its discretion in failing to grant him post-termination visitation rights pursuant to 22 M.R.S. § 4038-C(3) (2014).[5]   To the extent that the father is arguing that he should be granted post-termination visitation, the father is no longer a "parent" as defined by 22 M.R.S. § 4002(7) (2014), and, therefore, he may not petition for visitation pursuant to 22 M.R.S. § 4038-C(3).  To the extent the father is arguing that the court erred in its best interest analysis as to the child, we disagree.  *See In re C.P.*, 2013 ME 57, ¶¶ 16-20, 67 A.3d 558; *In re David W.*, 2010 ME 119, ¶¶ 6-10, 8 A.3d 673.

---

[5]   In the termination order, the court explained that the Department's permanency plan for the child was to develop a permanency guardianship with the paternal grandmother and mother pursuant to 22 M.R.S. § 4038-C (2014).

[¶19]  The father also argues that the trial judge was biased against him. Because the father did not make a motion for the trial judge's recusal, we review the judge's decision not to recuse sua sponte for obvious error.  *See In re Kaitlyn P.*, 2011 ME 19, ¶¶ 8-9, 12 A.3d 50.  Here, the father argues that the judge is biased against parents in child protective proceedings based on the fact that the judge assessed various pieces of evidence in this case and determined that they supported at least one ground of parental unfitness.  *See generally* M. Code Jud. Conduct III(B)(5) (discussing bias and prejudice).  As the father's counsel should be aware, it is the court's role as the fact-finder to make those assessments, and the court's factual findings were not clearly erroneous.  *See Dionne v. LeClerc*, 2006 ME 34, ¶ 15, 896 A.2d 923.  In addition, the evidence of the father's mental health and anger issues overwhelmingly supports the court's conclusion that the father had failed to make sufficient progress in those areas.

[¶20]  Finally, the father argues that he had a due process right to a jury trial. Because the father did not attempt to have this case removed to the Superior Court pursuant to M.R. Civ. P. 76C, we review the trial court's decision not to remove the case to the Superior Court sua sponte for obvious error.  *See In re Anthony R.*, 2010 ME 4, ¶¶ 8-9, 987 A.2d 532.  The court's decision not to remove the case was not an obvious error.  *See* 22 M.R.S. § 4031 (2014) (stating that the District Court has jurisdiction over child protection proceedings); *In re A.M.*, 2012 ME 118 ¶ 16,

55 A.3d 463 (stating that due process requires "an impartial factfinder," not a jury trial); *In re Shane T.*, 544 A.2d 1295, 1296-97 (Me. 1988) (affirming the denial of a motion for removal to Superior Court for a jury trial in a termination of parental rights case).

The entry is:

Judgment affirmed.

---

**On the briefs:**

Stephen C. Whiting, Esq., The Whiting Law Firm, P.A., Portland, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Springvale District Court docket number PC-2012-37
FOR CLERK REFERENCE ONLY