MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 57
Docket:       And-17-476
Submitted
  On Briefs:  April 10, 2018
Decided:      April 26, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

# IN RE CHILD OF KELCIE L.

**PER CURIAM**

[¶1]  The mother and father appeal from a judgment of the District Court (Lewiston, *Dow, J.*) terminating their parental rights to their daughter pursuant to 22 M.R.S. § 4055(1)(A)(1)(a), and (B)(2)(a), (b)(i), (ii), and (iv) (2017).  Both parents challenge the sufficiency of the evidence supporting the court's findings of unfitness.  In addition, the father challenges the court's determination that termination of his parental rights is in the child's best interest.  The evidence supports the court's findings and discretionary determinations, and we affirm the judgment.

## I.  BACKGROUND

[¶2]  Based on competent evidence in the record, the court found, by clear and convincing evidence, that both parents are unwilling or unable to protect the child from jeopardy or take responsibility for her in a time reasonably calculated to meet her needs, that both parents had failed to make a good faith

2

effort to rehabilitate and reunify with the child, and that termination of both

parents' parental rights is in the child's best interest. *See id.*; *In re Haylie W.*,

2017 ME 157, ¶ 2, 167 A.3d 576. The court based its conclusion on the

following findings of fact:

> [T]he Department has made reasonable efforts to rehabilitate and reunify the family, and has made reasonable efforts to identify and pursue an alternative permanency plan. Those efforts include: safety assessment; rehabilitation and reunification planning; family team meetings; supervised visitation for the parents; kinship placement foster care; transportation assistance; referrals for the parents to case management, individual counseling, medication management, and parenting education; parental assessment for the mother, and DHHS social work services.
>
> . . . .
>
> [The mother] has not consistently participated in medication management or mental health counseling. These services would have been very important for reunification. . . .
>
> [The mother's] visits with the child do not go very well. She was regularly prompted to engage with the child, but she remained quite withdrawn. . . .
>
> [The mother] is the victim of significant violence and intimidation by [the father]. . . . They remain together as a couple, living together in a two-bedroom apartment . . . . [The mother] has chosen [the father] over [the child]. In the four months prior to the TPR trial, she had declined to visit with [the child] because [the father's] visits had been suspended.
> . . . .

The father failed to participate in the [Court Ordered Diagnostic Evaluation], which would have been helpful to the Court in assessing his mental health, cognitive functioning, and parental capability. However, the TPR trial itself provided the Court some insight into the father's behavior . . . . The father is nearly unmanageable in a courtroom. Despite warnings from the Court and attentive, professional coddling by his attorney, the father repeatedly disrupted the proceedings with words and gestures. He is aggressive, disagreeable, and paranoid. . . .

[The father] has not consistently participated in medication management. . . . He has not consistently engaged in counseling.

[The father] is reported to be quite attentive to [the child] during visits, and he loves her. He has a certain warmth towards the child, and he tries to be a good dad. Still, he says the most outlandish and despicable things . . . .

During [one] visit, . . . [the father] tried, while he held [the child] in the car seat, to incite [the maternal grandfather] to hit him. . . . [The father's] behavior at that visit resulted in suspension of the visits for four months. Visits resumed in May, but were suspended again after two visits because [the father] had been arrested again for a new aggravated assault, a random attack on a stranger that left the stranger with a broken jaw. That charge remains pending. [The mother] was allowed to visit, but she declined, in solidarity with [the father]. There have been no visits by either parent with the child in the four months prior to the trial.

[The father] is violent towards [the mother]. He told [the maternal grandfather, "I almost killed your daughter . . . . I choked her out to the point where I almost couldn't bring her back," and he described strangling then reviving her by slapping her and splashing water on her.

The Court now turns to the issue of the child's best interest. . . .

4

The mother had not received prenatal care during the pregnancy, and she used marijuana throughout. She did not inform her mental health medication prescriber [of] her pregnancy, and she had prescriptions for Ritalin, Klonopin, Seroquel, and Zoloft during the pregnancy.

[The child] has been in the care of her foster parents, her maternal grandfather and step-grandmother, since her release from [the hospital] at 19 days old . . . .

. . . [The child] needs a calm and soothing environment, and the foster parents provide that. . . .

[The child] absolutely needs permanency. She has been in her grandparents' care her whole life, and her parents are not substantially closer to reunifying with her now than they were at the inception of this case.

## II. DISCUSSION

[¶3] We review the trial court's factual findings that a parent is unfit and that termination of parental rights is in the child's best interest for clear error and the ultimate decision to terminate parental rights for an abuse of discretion. *Adoption of Isabelle T.*, 2017 ME 220, ¶ 30, 175 A.3d 639.

A. Unfitness Findings

[¶4] Both parents argue that there was insufficient evidence to support the court's findings of parental unfitness. The mother contends that the Department failed to meet its obligations pursuant to 22 M.R.S. § 4041(1-A) (2017) and that this failure precludes any finding of unfitness. Contrary to the

mother's argument, the evidence in the record fully supports the court's finding that the Department satisfied its statutory obligation. In examining all relevant factors, there is sufficient evidence to support the court's finding, by clear and convincing evidence, of at least one ground of unfitness as to the mother. *See In re Aliyah M.*, 2016 ME 106, ¶ 5, 144 A.3d 50.

[¶5] Although the father contends that he made progress towards rehabilitation, the evidence was sufficient to support the court's finding, by clear and convincing evidence, of at least one ground of his parental unfitness. *See In re Hannah S.*, 2016 ME 32, ¶ 13, 133 A.3d 590.

B.      Best Interest Determination

[¶6]    The father also challenges the court's determination that termination of his parental rights is in the child's best interest. He argues that the court should have ordered a permanency guardianship instead of terminating his parental rights. *See* 22 M.R.S. § 4038-C (2017). Because the father did not argue for a permanency guardianship at trial, we review the court's decision not to grant a permanency guardianship for obvious error. *See In re L.T.*, 2015 ME 94, ¶¶ 19-20, 120 A.3d 650.

[¶7] "Permanency is a dynamic concept that must be fashioned from the actual circumstances and needs of the child or children before the court." *In re*

6

*Marcus S.*, 2007 ME 24, ¶ 10, 916 A.2d 225.  Here, the court found that the father avoided evaluation and treatment, used outlandish and despicable language regarding the child during visits, was violent in the child's presence, and was so unable to control himself at trial that the court had to arrange for him to participate from a separate courtroom.  The court also found that the child "absolutely needs permanency" and requires "a calm and soothing environment."  Given the father's circumstances and the specific needs of the child, the court did not commit obvious error when it determined that termination of the father's parental rights, with a permanency plan of adoption, is in the child's best interest.

The entry is:

Judgment affirmed.

---

Heather Gonzales, Esq., Strike, Gonzales & Butler Bailey, Portland, for appellant mother

Richard Charest, Esq., Lewiston, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2016-48