MAINE SUPREME JUDICIAL COURT                                        Reporter of Decisions
Decision:       2018 ME 91
Docket:         Pen-18-79
Submitted
  On Briefs:  June 27, 2018
Decided:      July 5, 2018

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF AMBER L.


PER CURIAM

[¶1]    Amber L. appeals from the judgment of the District Court (Bangor, *Campbell, J.*) that terminated her parental rights to her child pursuant to 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2)(a), and (b)(i)-(ii) (2017).[1]  The mother contests the sufficiency of the evidence supporting the court's findings of parental unfitness.  She further challenges the court's determination that termination of her parental rights is in the best interest of the child, arguing that because the kinship placement for the child provides sufficient stability, the court was required to order additional time for her to attempt to rehabilitate herself and reunify with the child.  We conclude that clear and convincing evidence supports the court's finding that the mother is unfit as a

---

[1]  The child's father had his parental rights terminated after failing to appear at the termination hearing.  The father is not a party to this appeal.

2

parent and that the court acted within its discretion in determining that termination is in the child's best interest. We therefore affirm the judgment.

## I. BACKGROUND

[¶2] After a two-day hearing in early February of 2018, the court found that the mother is unwilling or unable (1) to protect the child from jeopardy and (2) to take responsibility for him and that both of these circumstances are unlikely to change in a time reasonably calculated to meet the needs of the child. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii). After carefully considering the record, the court ultimately determined that terminating the mother's parental rights was in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a). To support its findings of parental unfitness and its best interest determination, the court made the following factual findings based upon clear and convincing evidence in the record:

> In this case, custody of [the child] was properly removed from the parents and granted to DHHS on October 21, 2016.
>
> . . . .
>
> . . . Mother clearly loves [the child] very much, and she has a bond with him. Mother has also made progress in some areas, for which she deserves credit. For example, mother has consistently engaged in supervised visits with [the child], and the visits have generally gone very well. Mother also regularly attends [a clinic] for replacement therapy, and she has not used opiates. . . . Unfortunately, however, despite the progress mother has made in

some aspects of this case, many of the very serious jeopardy concerns remain.

. . . .

. . . Throughout the case, DHHS has attempted to assist mother with her substance abuse and mental health issues. Despite this, mother has continued to self-medicate with marijuana, and she has been very inconsistent in her mental health therapy. Mother has also continued to make very impulsive and irresponsible decisions, and she continues to maintain contact with unsafe people.

. . . Mother [has] long-standing problems with a cannabis use disorder, personality disorder . . . , and complex post-traumatic stress disorder. . . . Mother has [a] limited ability to self-correct and learn from the consequences of her behavior and acting out. According to [the court-ordered psychologist], without appropriate treatment, mother's ability to safely parent as well as reunify with her children is guarded. [The psychologist] believes that mother's mental health diagnoses tend to be resistant to change and historically require long-term and committed involvement in treatment. Mother's prognosis is further guarded because of her tendency to self-medicate with marijuana.

. . . .

Although the [termination petition] had already been filed, mother did not follow through with her therapy [provider]. Rather than seeing her [therapist] twice a week, mother met with [her therapist twice between August and November of 2017]. . . . Although [her therapist] reports that mother has made progress since November 3rd, mother still does not regularly attend her appointments. . . . Mother has only attended her [dialectical behavioral therapy] groups three times, twice in December and once in January. Mother attended individual therapy twice, once on December 11, 2017, and once on January 29, 2018.

Mother's level of commitment is unacceptable. [Her therapist] testified that mother still has a lot of work to do. According to [her therapist], mother's [dialectical behavioral therapy] will take a year from November 3, 2017. (This assumes that mother will be fully committed to her therapy, which, at this point, has not been the case.) [Her therapist] believes that mother's individual therapy will take longer. . . .

The court is very concerned about mother's continuing pattern of engaging in unsafe relationships with [the father of her other children] and her former fiancé. . . . Mother has had numerous and consistent police contacts resulting from family fights, threatening behavior, protection order violations, mental health crises, and other incidents involving [her former partners]. Rather than demonstrating stability through her behavior, mother has consistently been unstable in her relationships and behavior.

. . . .

. . . Mother clearly has a long-standing substance abuse problem. She has continued to use marijuana throughout the time that this case has been pending. This is not a situation where mother smokes occasionally to relieve anxiety. According to [the psychologist in this case], this is a situation where mother abuses her methadone and marijuana to get intoxicated as a way of self-medicating. . . .

. . . .

. . . [The child] has special needs, and he requires a high level of care. He needs a safe and stable home. It is very important that he receive permanency as soon as possible. Unfortunately, mother is unable to provide permanency for [the child].

## II. DISCUSSION

[¶3] "We review the trial court's factual findings that a parent is unfit and that termination of parental rights is in the child's best interest for clear error and the ultimate decision to terminate parental rights for an abuse of discretion." *In re Child of Kelcie L.*, 2018 ME 57, ¶ 3, --- A.3d ---.

A.     Parental Unfitness

[¶4] We will reverse a finding on parental unfitness "only if there is no competent evidence in the record to support it, if the fact-finder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case." *In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199 (quotation marks omitted).

[¶5] The mother does not dispute the finding that at the time of the hearing, roughly fifteen months after the child was removed from her custody, she could not provide the child with permanency. Instead, she asserts that the circumstances causing her parenting deficits are likely to change in a reasonable time. "Although the [mother] contends that [she] made progress towards rehabilitation, the evidence was sufficient to support the court's finding, by clear and convincing evidence, of at least one ground of [her] parental unfitness." *In re Child of Kelcie L.*, 2018 ME 57, ¶ 5, --- A.3d ---.

6

Competent evidence in the record, particularly the testimony of the mental health professionals, fully supported the court's findings that the mother's parenting deficits pose jeopardy to the child and are not likely to be resolved absent intensive, long-term mental health treatment. *See id.*; *In re Mathew H.*, 2017 ME 151, ¶ 5, 167 A.3d 561. The court, as a result, did not clearly err by finding that mother's circumstances are unlikely to change within a time reasonably calculated to meet the child's needs.

B.    Best Interest of the Child

[¶6] Although the court granted the mother's two motions to continue the termination hearing over objections by the State, the mother argues that the child protection statute's prioritization of "family rehabilitation and reunification," 22 M.R.S. § 4003(3) (2017), and the absence of record evidence suggesting that prolonging the kinship placement would harm the child, required the court to provide her with additional time to attempt to rehabilitate herself and reunify with the child, *see* 22 M.R.S. § 4055(2) (2017). The mother further argues that the Department of Health and Human Services "overstates

the concept of permanency" in defending the court's termination of her parental rights.

[¶7] Among the general purposes for the child protection statute, the Legislature has given priority to "family rehabilitation and reunification." 22 M.R.S. § 4003(3). The Legislature, however, has qualified that general intent with the competing goal to "prevent needless delay" in achieving permanency for the child. *Id.* In the statutory provisions setting out the specific purposes of terminating parental rights, the Legislature has further emphasized its intent to "[e]liminate the need for children to wait unreasonable periods of time for their parents to correct the conditions which prevent their return to the family." *See* 22 M.R.S. § 4050(2) (2017). Although we have recognized that "[p]ermanency is a dynamic concept that must be fashioned from the actual circumstances and needs of the child," *In re Child of Kelcie L.*, 2018 ME 57, ¶ 7, --- A.3d --- (quotation marks omitted), "[i]nstability is antithetical to permanence." *In re Marcus S.*, 2007 ME 24, ¶ 11, 916 A.2d 225.

[¶8] The court's best interest analysis relied on competent evidence of the "mother's pattern of instability, her erratic behavior, and her continuing to maintain relationships with unsafe people," as well as competent evidence of her "long-standing substance abuse problem" and "significant mental health

8

issues that will take an extended period of time to treat." Contrary to the mother's contention, the court was not required to base its best interest determination on evidence of harm to the child resulting from additional time for the mother to further attempt rehabilitation and reunification with the child. Pursuant to the Legislature's mandate, the court deemed in this case that further delay of permanency is contrary to the child's best interest, existing attachments, and physical and emotional needs. *See* 22 M.R.S. § 4055(2); *In re Cameron B.*, 2017 ME 18, ¶ 13, 154 A.3d 1199; *In re Dakota K.*, 2016 ME 30, ¶¶ 8-10, 133 A.3d 257. The court's findings are supported by competent evidence in the record; the court's determination that termination of the mother's parental rights was in the child's best interest was well within the court's discretion.

The entry is:

Judgment affirmed.

---

Erik T. Crocker, Esq., Farrell, Rosenblatt & Russell, Bangor, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Bangor District Court docket number PC-2016-80
<small>FOR CLERK REFERENCE ONLY</small>