MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 132
Docket:        And-18-165
Submitted
  On Briefs:   September 26, 2018
Decided:       October 4, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.


IN RE CHILD OF JOSHUA S.


PER CURIAM

[¶1]  Joshua S. appeals from a judgment entered by the District Court (Lewiston, *Beliveau, J.*) terminating his parental rights to his child pursuant to 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2017).  The father challenges the court's determination that termination of his parental rights is in the best interest of his child rather than a permanency guardianship with the child's maternal grandmother.[1]  We affirm the judgment.

## I.  BACKGROUND

[¶2]  This case began on January 23, 2017, when both of the child's parents were arrested after law enforcement, working with the mother's probation officer, entered the family residence and seized heroin, cocaine, marijuana, and various items of drug paraphernalia.  At the time of their arrest,

---

[1]  The mother consented to the termination of her parental rights on March 12, 2018, and she is therefore not a party to his appeal.  *See* 22 M.R.S. § 4055(1)(B)(1) (2017).

2

the police observed needles, cocaine, heroin, and fentanyl out in the open. The child—then six years old—was present during the arrest.

[¶3] As a result of the arrests, on February 2, 2017, the Department of Health and Human Services filed a petition for a child protection order, alleging that both parents abused drugs, the father was trafficking scheduled drugs out of the home, and that the child was exposed to unsafe conditions, including access to scheduled drugs and domestic violence between the mother and father. The court (*Dow, J.*) granted a preliminary protection order that day, placing the child in the custody of the Department.

[¶4] On April 24, 2017, the District Court (*Oram, J.*) entered a jeopardy order by agreement, finding that the parents had untreated substance abuse and mental health issues and exposed the child to an unsafe living environment and unsafe individuals. By judicial review order dated September 14, 2017, the court (*Dow, J.*) ordered the Department to cease reunification efforts with the father because continuing such efforts would be "inconsistent with the permanency plan for the child." On January 3, 2018, the Department petitioned the District Court to terminate the parental rights of both parents. *See* 22 M.R.S. § 4055(1)(B)(2) (2017).

[¶5]     After a one-day testimonial hearing, by judgment dated April 11, 2018, the court (*Beliveau, J.*) terminated the father's parental rights, having found, by clear and convincing evidence, that (1) the father was "unable to take responsibility for his child and is unable to protect [the child] from jeopardy within a reasonable time to meet [the child's] needs," and the "circumstances clearly indicate that there will be no change within a time reasonably calculated to meet the child's needs" and (2) termination was in the best interest of the child. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii).  The court based its decision on the following findings, which are supported by competent record evidence.

> The child [] has been in foster care since February 2, 2017. [The child] is now 7 years of age.  The father is still incarcerated and his expected release date is March 2020.  He has been incarcerated since January of 2017.  He was expected to participate in substance abuse and mental health counseling while incarcerated.  He attended IOP [Intensive Outpatient Program] while in jail but did not participate in follow up treatment. . . . Prior to his incarceration he had been abusing illegal drugs since age 25 years.  This continued for at least 5 years prior to his incarceration. . . . During those years, he attended the local Grace St. IOP program but still relapsed.  He never attended any counseling or treatment programs after completing the IOP program. . . . According to the Father's testimony, his longest period of sobriety was 7 months during the 4 to 5 years prior to his incarceration.  He has waited till just recently to attend a parenting class in jail.
>
> . . . .

The [Department] caseworker . . . testified the Father was given DHHS contact information but never called to ask how his child was doing. In addition, [the Department caseworker] said that the Father upon release would have to undergo mental health and substance abuse counseling and prove he can be sober before caring for his child. This [c]ourt finds that it would be a long period of time for this to happen. His history of unsuccessful treatment and sobriety are negatives in relation to the time it would take for him to be successful.

. . . .

This [c]ourt found and concluded in its Jeopardy Order that [the child] was in "circumstances of jeopardy to [the child's] health and welfare as evidenced by the threat of serious harm and the threat of neglect." [The Father] continues to have serious untreated substance abuse, mental health issues as well as a history of domestic violence. In addition, the parents exposed the child to an unsafe living environment and unsafe individuals who frequented their home.

. . . .

[T]he child is doing very well in [the] placement with [the child's] grandmother. The GAL has concluded that termination of parental rights is best for [the child] and not a Permanency Guardianship. Adoption with [the] Grandmother is best for the child.

. . . .

The Father has no plans for housing upon his release since his release will not be until March 2020. He agrees that after his release he would not be in a position to take immediate custody of his child.

[T]his [c]ourt finds based on the evidence that the Father's road to reunification is a long way off. The child cannot wait

another year or two for [the] Father to reunify and be rehabilitated. His history of mental health and above all substance abuse dictates that the [c]hild is in need of permanency now and not two to three years from now. The plan for permanency is termination of the Father's parental rights which is the most reasonable for the child and in [the child's] best interests.

. . . .

The child is in need of permanency. [The child] cannot wait for [the] Father to rehabilitate so as to pursue reunification within a reasonable time.

## II.  DISCUSSION

[¶6]  "We review the trial court's factual finding that . . . termination of parental rights is in the child's best interest for clear error and the ultimate decision to terminate parental rights for an abuse of discretion." *In re Child of Amber L.*, 2018 ME 91, ¶ 3, 188 A.3d 876 (quotation marks omitted).  Based upon the above facts, all of which have evidentiary support in the record, the court did not err in finding that the father is unfit and that termination of his parental rights is in the best interest of the child.  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.

[¶7]  The trial court found that the father's incarceration, admitted history of substance abuse, untreated mental health issues, and history of domestic violence dictate that the child needs permanency now, not years from

6

now. The child has been in foster care since January 2017, and the child's father will be released from prison no sooner than March 2020. The child cannot wait for three years, at minimum, to reunify with the father. *See In re B.P.*, 2015 ME 139, ¶ 19, 126 A.3d 713.

[¶8] The father also argues that the court should have granted permanency guardianship to the child's grandmother in lieu of terminating his parental rights. The court's determination that adoption, rather than a permanency guardianship, was in the child's best interest is supported by the guardian ad litem's testimony to that effect. Specifically, the guardian ad litem testified that permanency guardianships are better suited for children older than this child and where the parents do not have extensive histories of substance abuse. In light of this testimony, the court did not abuse its discretion in concluding that termination of the father's parental rights and "[a]doption with [the] [g]randmother is best for the child."

The entry is:

Judgment affirmed.

Richard Charest, Esq., Lewiston, for appellant Father

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2017-008
FOR CLERK REFERENCE ONLY