MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2018 ME 146
Docket:       Pen-18-185
Submitted
 on Briefs:   October 10, 2018
Decided:      November 6, 2018

Panel:        SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


IN RE CHILDREN OF ANTHONY M.


PER CURIAM

[¶1]  The mother and father of three children appeal from a judgment of

the District Court (Bangor, *Jordan, J.*) terminating their parental rights to their

two older children pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a),

(b)(i)-(ii) (2017).[1]  The parents challenge the sufficiency of the evidence

supporting the court's determination of parental unfitness and further contend

that the court erred by concluding that termination of their parental rights is in

the best interests of the children.  We affirm the judgment.

---

[1]  The judgment terminating parental rights also includes a jeopardy order that pertains to a
separate child protection action relating to the parents' third and youngest child.  The mother initially
appealed the jeopardy order but later withdrew it, leaving only the appeal from the termination order
relating to the two older children.  Unless indicated otherwise, our references in this opinion to the
children mean the two older children as to whom the parents' rights have been terminated.

## I. BACKGROUND

[¶2]  The following facts, which are supported by the evidence, are drawn from the judgment[2] and the procedural record.  *See In re Children of Nicole M.*, 2018 ME 75, ¶ 2, 187 A.3d 1.

[¶3]  In July of 2016, the Department of Health and Human Services filed a petition for preliminary protection and a child protection petition with respect to the mother and father's two children, the younger of whom had just been born.  *See* 22 M.R.S. §§ 4032-4033 (2017).  The preliminary protection order was granted by the court (*Budd, J.*), and the children were placed in the custody of the Department at that time.

[¶4]  By agreement, in February of 2017, the court (*Jordan, J.*) made a finding of jeopardy against the mother and father based on the father's history of violence and criminal involvement, the mother's pattern of choosing unsafe partners, and each parent's untreated mental illness.  The court's permanency planning order included requirements that each parent complete a mental health evaluation and that the father be evaluated for the batterers intervention

---

[2]  The judgment also contains descriptions of testimony that the court did not characterize as findings of fact.  We restrict our narrative to those facts that the court framed as its findings.

program.  Both parents were ordered to follow any recommendations made by the evaluators.

[¶5]   The following June, the Department petitioned the court to terminate both parents' parental rights.  While the termination petition was pending, the mother gave birth to the parents' third child, who is the subject of a separate child protection proceeding. *See supra* n.1.  After holding a three-day hearing in March of 2018, the court entered a judgment terminating both parents' parental rights to the two older children.  Based on clear and convincing evidence, the court found that each parent was unwilling or unable to protect those children from jeopardy and that that was unlikely to change within a time reasonably calculated to meet the children's needs, and that each parent was unwilling or unable to take responsibility for the children and could not do so within a time reasonably calculated to meet the children's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).  The court also determined, by clear and convincing evidence, that termination of each parent's parental rights is in the children's best interests.  *See* 22 M.R.S. § 4055(1)(B)(2)(a).

[¶6]  The court made the following factual findings, all of which are drawn from competent evidence in the record:

> . . . The parents have a substantial history with the Department of Health & Human Services (DHHS) Child Protection Division.  Each

parent has other children in the custody of other parties. Both parents have been determined by the Court to have longstanding problems that impact on their ability to safely parent children. The principal question before this Court: Have they addressed those problems in a substantial enough fashion that jeopardy has been alleviated?

. . . .

. . . [The mother's] jeopardy is based upon threat of neglect and neglect/failure to protect. She was diagnosed with PTSD and was not in treatment at the time of the Jeopardy Order. She also had a pattern of choosing unsafe partners including . . . the father of these . . . children. The jeopardy as to [the father] was due to physical abuse and threat of neglect. He was found to have a lengthy history of violence, including being physically violent with [the mother] while she was pregnant with [the middle child]. He had untreated mental health issues including bi-polar disorder and, at that time, had warrants in the State of Nebraska.

The parties both have criminal records. . . . [The mother's] convictions [include] theft, . . . and operating while license suspended or revoked on June 21, 2017. [The mother] also has a number of pending charges.

The criminal record of [the father] is also significant [and includes] . . . assault; . . . domestic violence assault, criminal mischief, and operating with a suspended license, conviction date April 5, 2010; two unlawful possession of scheduled drugs, conviction date August 19, 2010; unlawful furnishing of drugs, conviction on November [8], 2012; two Class C felony convictions for unlawful possession of hydrocodone and oxycodone respectively on April 19, 2013; [three convictions for] operating while license is suspended or revoked [in] 2017; and a theft conviction on October 4, 2017. [The father] also acknowledges having a domestic abuse conviction from 2016 in Nebraska involving [the mother].

. . . [A] Licensed Clinical Social Worker who does batterers intervention program [BIP] assessments . . . did an assessment of [the father]. . . . She testified that there were inconsistencies between the paperwork and her face-to-face interview with [the father].

[The LCSW] stated that those inconsistencies concern substance abuse and domestic violence. In his written report [the father] denied having any substance abuse problems. He also denied any domestic abuse. When interviewed by [the LCSW], he acknowledged that he had several convictions for drugs. He also verbally admitted to three convictions for domestic abuse. He explained the apparent inconsistencies by stating that although he pled guilty to the domestic violence charges, he had not been domestically violent.

The Court finds that [the father's] explanation does not make sense. . . . Having been convicted on a number of occasions of drug possession or furnishing drugs, he clearly had legal problems. The same analysis applies to the domestic violence area. . . . The Court finds that his answers were evasive and attempts to avoid responsibility for his conduct. Neither of those findings is helpful to showing an alleviation of jeopardy.

. . . [A nurse who] works at Eastern Maine Medical Center in the neonatal intensive care unit . . . worked with these parents when their [youngest child] was born [in August of 2017]. [The child] was exhibiting symptoms of neonatal abstinence syndrome. Essentially, she was experiencing withdrawal from the drugs she was exposed to while in utero.

[The nurse] testified that [in one interaction she had with the father, he] became very angry and threatening toward [her]. She credibly testified he said that if she did not leave the room, he might do something that would get him kicked out. . . . The Court finds that this circumstance also points to continuation of jeopardy as of the date of birth of [the youngest child.]

. . . .

Just prior to the last hearing date, [the father] began attending . . . BIP. [The person who] runs that program . . . testified that [the father] first came to their program in May 2017 [but] did not do the intake work until January 2018 [and his] first session was February 8, 2018. . . . [The father] had attended two sessions out of the forty-eight [as of the end of February of 2018]. . . .

. . . .

[The mother] and [the father] have both tested positive for illegal substances in 2017. [The father] tested positive as recently as November 2017 for opiates and other drugs. The meconium of [the youngest child] tested positive for cocaine and another drug. The Court finds that the positive test of the meconium could only have come from [the mother's use of] cocaine during pregnancy. . . .

. . . .

. . . The Court found [the father's current therapist] to be very credible. He testified that [the father's] attendance has improved since his sporadic first attendance. He testified that [the father] has a severe cannabis use disorder. . . .

[The father's therapist] testified that during the last five weeks [the father] has done well with his attendance. He has concluded that [the father] still lacks insight into his problems. He testified that [the father] is in the pre-contemplative mode, which means he doesn't believe there is a problem. . . .

[The therapist] also testified that [the father] is impulsive and immature, but he is authentic in who he presents himself to be. [The father] has shown a willingness to do better. The treatment plan for [the father] is lengthy. The goal is to first get him off of drugs, and then get at the underlying problems. [The therapist] testified that he believes [the father] can benefit from an intensive

outpatient treatment program.  The Court concludes the evidence supports that opinion. . . .

. . . .

The two oldest children have been in State custody for over eighteen months.  The Court cannot set a firm date for when jeopardy would be alleviated enough to have a trial home placement.  The uncertainty regarding that time and how long a trial home placement could go (and whether it would be successful) . . . puts this case well beyond the statutory timelines for permanency for these two children. . . .

Accordingly, the Court finds by clear and convincing evidence that [the mother] and [the father] have been unwilling or unable to protect the children from jeopardy within a time which is reasonably calculated to meet the children's needs.  The Court further finds that [the mother] and [the father] have been unwilling or unable to take responsibility for the children which is reasonably calculated to meet the children's needs.

. . . The Court further finds by clear and convincing evidence that termination is in the children's best interests.  The Court further finds that it is in [the] best interests of [the children] to be free for adoption . . . .

## II.  DISCUSSION

[¶7]  "We review the trial court's factual findings that a parent is unfit and that termination of parental rights is in the child's best interest for clear error and the ultimate decision to terminate parental rights for an abuse of

8

discretion." *In re Child of Amber L.*, 2018 ME 91, ¶ 3, 188 A.3d 876 (quotation marks omitted).

A.     Parental Unfitness

[¶8]   "[I]n order to terminate parental rights[,] the court must find, by clear and convincing evidence, at least one of the four statutory grounds of parental unfitness." *In re Children of Melissa F.*, 2018 ME 110, ¶ 9, 191 A.3d 348 (alterations in original) (quotation marks omitted).   A finding of parental unfitness will be vacated "only if there is no competent evidence in the record to support it, if the fact-finder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case." *In re Child of Amber L.*, 2018 ME 91, ¶ 4, 188 A.3d 876 (quotation marks omitted).

[¶9]   Each parent contends that the evidence presented at trial was insufficient to support either of the two types of parental unfitness found by the court given the evidence of their progress toward alleviating their parenting deficits.  We conclude that competent evidence in the record exists to support both types of parental unfitness.

[¶10]  Since the court's February 2016 finding of jeopardy, each parent's court-ordered engagement in mental health treatment has been inconsistent.

As the court found, with support in the record, the parents' attendance in individual counseling was often sporadic, and the father's delay in enrolling in the batterers intervention program—despite knowing that his attendance in the program was a condition for increased contact with the children—meant that, as of the time of the termination hearing, he had barely begun the program. While the court recognized that the parents had made some progress in their mental health treatment by the time of the termination hearing, the testimony of the parents' mental health professionals indicated—and the court found— that each parent still has a long therapeutic road ahead. Moreover, since the jeopardy hearing, both parents have tested positive for illegal substances, and both parents have been involved in new criminal activity.

[¶11] "Marginal progress toward reunification and a simple desire to remain parents is not enough to ameliorate jeopardy . . . ." *In re Hope H.*, 2017 ME 198, ¶ 10, 170 A.3d 813. On this record, the court did not clearly err by finding that, despite their recent progress, the parents are unlikely to become fit within a time reasonably calculated to meet the needs of the children. *See In re Child of Amber L.*, 2018 ME 91, ¶ 5, 188 A.3d 876.

10

B.      Best Interests of the Children

[¶12]   The parents also contend that the court failed to provide a sufficient explanation for its finding that the termination of each parent's parental rights is in the best interests of the children.  Contrary to this assertion, the court's findings, based on clear and convincing evidence in the record, are sufficient to support its best interest determination.

[¶13]   The children at issue here have been in foster care since July of 2016, and in the home of their current foster family since November of 2016. At the time of the termination proceedings, the older child was three years old, and the younger was nineteen months.  The court acknowledged the parents' recent progress toward alleviating jeopardy but also properly found that, at best, "it would take many more months" before the parents could participate even in a trial home placement that would be safe for the children.

[¶14]   The Legislature has explicitly stated that the purposes of the termination statute include "[e]liminat[ing] the need for the children to wait unreasonable periods of time for their parents to correct the conditions which prevent their return to the family" and "[p]romot[ing] the adoption of children into stable families rather than allowing the children to remain in the

impermanency of foster care." 22 M.R.S. § 4050(2)-(3) (2017). *See In re Children of Melissa F.*, 2018 ME 110, ¶ 13, 191 A.3d 348.

[¶15] The court did not abuse its discretion by finding that the best interests of the children would be served, not by forcing them to continue to wait for an uncertain and unreasonable amount of time for the parents to alleviate circumstances of jeopardy, but by allowing them to be free for adoption.

The entry is:

Judgment affirmed.

---

Robert E. Meggison, Esq., Belfast, for appellant father

Nicholas Fowler, Esq., Bangor, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Bangor District Court docket number PC-2016-47 and PC-2017-80
FOR CLERK REFERENCE ONLY